The STATE of Ohio, Appellee,

v.

ROSS, Appellant.

[Cite as *State v. Ross* (1999), 135 Ohio App.3d 262.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA99–01–004.

Decided Oct. 25, 1999.

*Donald W. White,* Clermont County Prosecuting Attorney, and *David H. Hoffmann,* Assistant Prosecuting Attorney, for appellee.

*R. Daniel Hannon,* Clermont County Public Defender, and *Joy M. Albi,* Assistant Public Defender, for appellant.

WILLIAM W. YOUNG, Judge.

Defendant-appellant, Michael W. Ross, appeals his conviction in the Clermont County Court of Common Pleas for felonious assault and child endangering.

On Saturday, May 23, 1998, appellant was caring for his two-month-old son, Daven, and Daven's six-year-old half sister, Kylie Sebastian, at their home at 105 Cardinal Avenue, Union Township, Clermont County, Ohio. The children's mother, Kimberly Sebastian, was appellant's girlfriend, with whom he shared the house. Kimberly was working that night, and appellant was to pick her up from work at the end of her shift.

Between 7:30 and 8:00 p.m., appellant called Kimberly at work to say that something was wrong with Daven's leg. Appellant told Kimberly that he had left Daven in the living room when he went to get a diaper and a bottle. While appellant was in the kitchen, he heard Daven begin to cry. He returned to the living room to see Daven on the floor with his legs buckled underneath his body and Kylie running away. Appellant told Kimberly that when he tried to straighten Daven's legs, he heard a loud pop.

Kimberly told appellant to pick her up and bring the children with him. They stopped for dinner on the way home, and when Kimberly checked Daven's legs, she found nothing wrong. Daven allegedly slept well that night and there were no indications that he was injured. The next day, Sunday, May 24, Daven was supposedly very playful and moving his legs without problem. Although he was occasionally irritable, Kimberly felt this was due to him being colicky. Daven apparently slept soundly that night.

The next morning, Kimberly checked on Daven and noticed that his left leg was swollen. She called her doctor, who advised that she elevate Daven's legs. When this failed to alleviate the swelling, appellant and Kimberly took Daven to the emergency room at Anderson Mercy Hospital. It was determined that Daven's left leg was severely broken, and he was transferred to Children's Hospital Medical Center in Cincinnati, Ohio.

Daven was treated by Dr. Karen Reed at Children's Hospital. Daven's left femur was transversely fractured, or broken completely through the bone, and the fracture was displaced, so that the ends of the break overlapped. Appellant told Dr. Reed that he had heard a pop when attempting to straighten Daven's legs on Sunday night. Daven was re-examined six hours later, after being fitted with a body cast. The cast covered Daven from his chest to his ankles. The nurse who performed the second exam spoke with appellant, who stated that he had seen Daven being held by Kylie on Sunday night. Appellant told the nurse that he left the room to get Daven's bottle, and when he returned, he found

Daven on the floor with his legs bent backwards. When he picked up Daven and tried to straighten the child's legs, he heard a pop.

On Tuesday, May 26, 1998, Beverly Ringel, a social worker with the Children's Hospital's child-abuse team, evaluated Daven's case and spoke with appellant, who related a story similar to that given to the nurse the night before. The next day, Wednesday, May 27, 1998, Kimberly was interviewed by Heidi Mallott, another social worker with the child-abuse team. Kimberly told Mallott that appellant had called her at work on Saturday night to say that something was wrong with Daven's legs. Kimberly told Mallott that appellant had found Daven on the couch. Kimberly was aware that details of her story were not consistent with the story given by appellant to hospital personnel.

Later that day, Kimberly was interviewed by Dr. Robert Shapiro, head of the hospital child-abuse team. Kimberly confirmed the details of the story she had given to Mallott. She stated that Daven had shown no signs of injury prior to Monday morning. Based upon the inconsistencies in the details given in the interviews, Daven's medical records, the improbability that simply pulling on Daven's leg as described would have caused the injury, and the improbability that Daven had shown no signs of pain or injury, Shapiro and the child-abuse team concluded that Daven had been abused and contacted Clermont County Children Protective Services.

Daven was released from the hospital on May 30, 1998. The body cast was removed on July 5, 1998, because of complications affecting Daven's leg. After that time, Daven attended the Wiley School of Physical Therapy, where he was treated for muscle atrophy because the cast had restricted his movement.

On Wednesday, May 27, 1998, Det. Sue Madsen of the Union Township Police Department ("UTPD") interviewed appellant at UTPD headquarters concerning the allegation that Daven had been abused. The interview was recorded on audiotape. Appellant claimed that when he arrived home after dropping Kimberly off for work, he left Daven in the car seat on the living room floor in front of the couch. Daven began to cry, and appellant placed him on the corner of the couch. When appellant went to get Daven's bottle, Kylie entered the room and picked up Daven. As appellant returned with Daven's bottle, he saw that Kylie had placed Daven on the couch with his legs underneath his body. As Daven attempted to wiggle his legs, appellant pulled on Daven's left leg and heard a pop. At that time, appellant called Kimberly to inform her that something was wrong.

On June 18, 1998, Det. Madsen conducted a second recorded interview of appellant at the Clermont County Jail, where appellant was incarcerated on unrelated charges. Appellant admitted that Kylie was not in the living room when Daven was hurt and that he should not have blamed her for Daven's injuries. Appellant stated that he had picked up Daven, but when he put Daven

down, the child's leg became caught in the couch. When appellant pulled on the leg, it popped. Appellant then got Daven's bottle, and Kylie came into the room and picked up Daven. Appellant claimed to have heard a second pop when Kylie put down Daven. Appellant then changed Daven's diaper, moving the child's legs without any problems. At other times in the interview, appellant claimed that he had left the room to get a new diaper, or both a diaper and bottle. At one point late in the interview, appellant stated that he had injured Daven.

A third recorded interview of appellant was taken by Det. Madsen on August 6, 1998, after appellant had been released from jail. Appellant claimed that he was changing Daven's diaper when the injury took place. He stated that he picked up Daven's legs so that the left leg was underneath Daven and the right leg was sticking out. Appellant thought he may have roughly handled Daven and jerked Daven's legs, causing the injury.

On August 12, 1998, a two-count indictment was filed against appellant. Count One alleged that appellant had committed a felonious assault in violation of R.C. 2903.11(A)(1),[1] a felony of the second degree. Count Two alleged that appellant had committed child endangering in violation of R.C. 2919.22(B)(2),[2] a felony of the second degree.

A jury trial commenced on October 27, 1998. The state first presented Kimberly as a witness. She testified to the events surrounding Daven's injury and subsequent treatment at the emergency room. She testified that appellant had stated that he did not hurt Daven and that there had been prior problems with Kylie being jealous of younger children. On cross-examination, she stated that she had never observed anything in appellant's behavior that would give her cause for alarm with Daven.

On redirect examination, Kimberly was asked if she had ever made allegations of abuse against appellant. Appellant objected to the question as beyond the scope of cross-examination and an improper inquiry into appellant's character. The trial court overruled the objection, finding that appellant's questions to Kimberly regarding his conduct with the children put his character at issue, which the state could impeach with specific incidents of alleged abuse. Kimberly admitted there had been a prior proceeding in the juvenile court regarding

---

1. R.C. 2903.11(A) provides:
 "No person shall knowingly:
 "Cause serious physical harm to another or to another's unborn."

2. R.C. 2919.22(B) provides:
 "No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
 "* * *
 "(2) Torture or cruelly abuse the child."

suspicions of abuse by appellant, but she denied making allegations of abuse. She testified that the proceedings concerned an accident that occurred while Daven was in appellant's care in which Daven had fallen off of the living room couch and hit his head on a coffee table. ·

Appellant re-cross-examined Kimberly about this incident. Kimberly testified that she believed that Daven's earlier injury was only an accident, and that she had not brought charges of abuse against appellant. Appellant reserved the right to call Kimberly as a witness, and the trial court ordered that she be available to testify if recalled.

Shapiro then testified about the details of the child-abuse team's investigation of Daven's broken femur. He testified that the femur is not easily broken and that it takes a significant amount of force to transversely break and displace the femur. He testified that it was very unlikely that the break in Daven's femur occurred by having his leg pulled as described by appellant, or that Daven would show no indication of pain or injury on Sunday as claimed by Kimberly. Shapiro testified that the inconsistent stories provided by appellant were suspicious, as was the explanation provided by appellant for Daven's injury, which Shapiro believed was inconsistent with the injury. In Shapiro's opinion, Daven's injury was a "non-accidental fracture."

The state's final witness was Det. Madsen, who detailed her interviews with appellant. The interviews were played for the jury, with irrelevant or inadmissible portions omitted. At the end of her direct testimony, Det. Madsen began to explain interrogation techniques and how she tells if an interviewee is lying by the words used by and the emotions shown by the interviewee. As Det. Madsen began her explanation, the trial court convened a sidebar conference, at which it *sua sponte* excluded this testimony as an improper attempt to attack appellant's credibility through supposed expert testimony. The trial court gave the jury an extended instruction not to consider Det. Madsen's last statements.

On cross-examination, Det. Madsen was asked about the circumstances surrounding her interviews of appellant. When asked about the June 18, 1998 interview, which took place in the Clermont County Jail, she testified that appellant had been arrested, but she did not indicate on what charges. Appellant moved for a mistrial, which was denied. The trial court found that no crime had been stated, and ordered that the jury disregard any implication as to the charge on which appellant had been arrested. Appellant asked if Det. Madsen had made threats to remove Daven from appellant's and Kimberly's care. The state objected, arguing that the questions lacked a good faith basis. The trial court deferred its decision until appellant could prove a good faith basis.

Upon completion of appellant's cross-examination of Det. Madsen, the state moved to admit a partial transcript of the prior juvenile proceeding. Appellant

objected, arguing that appellant had not been represented at the prior hearing. The trial court admitted the transcript after deleting irrelevant or inadmissible portions. The trial court found that appellant had been given the opportunity to be represented and to cross-examine witnesses at the juvenile proceeding.

At the conclusion of the state's case-in-chief, appellant made a motion for acquittal pursuant to Crim.R. 29. The trial court denied the motion.

Appellant attempted to recall Kimberly as a witness, but at that time Kimberly was not present. The trial court ordered that Kimberly be contacted and ordered her to appear. The trial was held in recess until she arrived. Appellant's counsel informed the court that he had held off asking certain questions of Kimberly pending Det. Madsen's testimony. The trial court ordered that appellant's recall examination of Kimberly would be limited to forty–five minutes. The trial court found that appellant had opportunity to cross-examine Kimberly, and that any further examination should be limited to matters into which appellant could not have previously inquired, such as rebutting testimony of Det. Madsen. Appellant's counsel agreed to the restrictions.

Kimberly was asked if Det. Madsen had made threats to take away Daven if Kimberly and appellant did not cooperate in the investigation. Kimberly testified that no such threats were made, but Det. Madsen had stated that it would be in appellant's best interest to cooperate. Appellant then called his mother, Cheryl Joy Ross, who testified that appellant was under pressure from Det. Madsen and Children's Protective Services to cooperate. The court ruled that appellant did not have a good faith basis to argue that Det. Madsen had threatened appellant.

Appellant was found guilty on both charges. A sentencing hearing was held on November 19, 1998. The trial court determined that appellant's offenses were not allied offenses of similar import, but the offenses did arise out of the same conduct. The trial court ordered that appellant serve a five-year term of imprisonment on the felonious assault charge and a four-year term of imprisonment on the child endangering charge, the sentences to be served concurrently.

Appellant appeals, raising three assignments of error. We address the assignments of error out of order.

Assignment of Error No. 2:

"The appellant, Mr. Ross, was prejudiced by the prosecutor's improper comments."

In his second assignment of error, appellant contends that he was unfairly prejudiced by instances of prosecutorial misconduct during closing arguments. Appellant asserts that the prosecutor made improper comments concerning appellant's and Kimberly's credibility.

■ Because these matters were not objected to at trial, the issue is waived unless the errors rise to the level of "plain error." *State v. Nicholas* (1993), 66 Ohio St.3d 431, 435–436, 613 N.E.2d 225, 228–230. Under plain error analysis, we must determine whether the substantial rights of the accused are so severely affected as to undermine the fairness of the guilt-determining process. Crim.R. 52(B) [3]; *State v. Swanson* (1984), 16 Ohio App.3d 375, 377, 476 N.E.2d 672, 675. It must appear that, but for the error, the result of the trial clearly would have been otherwise and that to not correct the error would be a clear miscarriage of justice. *State v. Bock* (1984), 16 Ohio App.3d 146, 150, 474 N.E.2d 1228, 1232– 1233.

■ The test for prosecutorial misconduct is whether the remarks made by the prosecution were improper and, if so, whether they prejudicially affected substantial rights of the accused. *State v. White* (1998), 82 Ohio St.3d 16, 22, 693 N.E.2d 772, 778–779; *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 317–318, 470 N.E.2d 883, 885. Even if a prosecutor's statements during closing arguments are improper, reversal based upon those statements is warranted "only if [they] 'permeate[ ] the entire atmosphere of the trial.' " *State v. Tumbleson* (1995), 105 Ohio App.3d 693, 699, 664 N.E.2d 1318, 1322, quoting *United States v. Warner* (C.A.6, 1992), 955 F.2d 441, 456. In reviewing the record, it must be remembered that both the defense and prosecution are given wide latitude in their arguments "as to what the evidence has shown and what reasonable inferences may be drawn therefrom." *Tumbleson,* 105 Ohio App.3d at 699, 664 N.E.2d at 1322, quoting *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293, 299–300. If the prosecutor does state an opinion, it must be based upon the evidence presented and not personal beliefs. *State v. Watson* (1991), 61 Ohio St.3d 1, 10, 572 N.E.2d 97, 106. In examining the prosecutor's arguments for possible misconduct, we must review the argument as a whole, not in isolated parts, and we must examine the argument in relation to that of opposing counsel. See *State v. Moritz* (1980), 63 Ohio St.2d 150, 157–158, 17 O.O.3d 92, 96–97, 407 N.E.2d 1268, 1273–1274.

For the most part, the prosecutor's closing arguments were not objectionable. The prosecutor discussed the evidence presented at trial, especially the inconsistencies in the many stories given by appellant about how Daven's leg was broken. It was then that the prosecutor made the challenged comments. The prosecutor directly attacked appellant's credibility, arguing that the fact that appellant's "versions [of how Daven was injured] are less than truthful is borne out in there

---

3. Crim.R. 52(B) states:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

[the taped interviews] because, number one, they change at least three times on tape. And as Shapiro testified, they were changing even before, at the hospital when he spoke to the hospital personnel.

*"One of the telltale signs in any experience and probably in yours, when someone is going to tell me something that's not true they'll often start out by saying 'honestly' or they'll start out by saying 'to tell you the truth.' Note how many times phrases like that appear on these tapes."*[4] (Emphasis added.)

The prosecutor then attacked appellant's credibility by referring to the excluded testimony of Det. Madsen:

"You'll note on the tapes that the defendant made many statements that he is remorseful, that he wants to be back with his child. I have no doubt that those are things that a normal person would feel. *However, Detective Madsen did testify that the emotions you would normally see were not present in those interviews."* (Emphasis added.)

After appellant presented his closing argument, the prosecutor argued in rebuttal. In attacking the credibility of Kimberly's accounts that appellant had not hurt Daven and that Daven had not displayed any signs of pain or injury, the prosecutor stated:

*"And you can use one of the same mechanisms for determining the credibility that's used on the defendant when you hear the tape, as her testimony on the stand. How many times does she preface her answer with the word 'honestly' or 'to tell the truth'? Those things make people's credibility suspect in my mind.* You can give it the weight that it deserves." (Emphasis added.)

The prosecutor then argued that appellant's accounts of the circumstances of Daven's injury were inconsistent with the facts, concluding:

"Ladies and gentlemen, I'm going to stop because I know you've heard and seen enough of this case. *You know that this man's stories on the tapes is* [*sic*] *bologna from beginning.* The child was injured at this man's hands in a moment of anger. And a result of those two facts, this defendant is guilty of both charges, and I ask you to make that finding." (Emphasis added.)

This last comment was not improper when viewed in light of the context in which it was made. The prosecutor was not precluded from pointing out that the numerous inconsistencies in appellant's stories made these stories incredible. The prosecutor may not have chosen the best word to convey the substance of his

4. The statements challenged by appellant are underlined. Additional statements are included to provide context for the challenged statements.

argument, but he was not prevented from arguing to the jury that the evidence demonstrated that appellant's stories could not be taken as true.

■ We are compelled to find that the remaining remarks made by the prosecutor went beyond the latitude given to counsel when making arguments to the jury. The prosecutor attacked appellant and Kimberly's credibility through his own personal beliefs, asserting that they had lied because of their use of particular words. The basis for this argument was not evidence before the jury, but only the prosecutor's own experience. Such statements are improper. *Watson,* 61 Ohio St.3d at 10, 572 N.E.2d at 106.

■ We are also disturbed by the prosecutor's reference to the excluded testimony of Det. Madsen. The trial court excluded any of her supposed expert testimony on how to read an interviewee's words and emotions to judge whether the interviewee is lying. The trial court admonished the prosecutor that any attempt to introduce or refer to such testimony could be grounds for a mistrial.

■ Even with these comments by the prosecutor, we cannot say that appellant was denied a fair trial. Based upon the numerous inconsistencies in appellant's stories, the credibility of appellant's accounts of Daven's injury was open to question. The state presented substantial evidence that Daven's injuries could not have resulted from being pulled as appellant described, and that Daven would have displayed pain due this injury. Thus, the claims made by appellant and Kimberly that appellant did not use undue force on Daven and that Daven displayed no signs of injury were open to dispute. The prosecutor legitimately attacked these inconsistencies many times during his closing argument, and appellant's counsel addressed the inconsistencies during his closing argument.

More important, appellant admitted that Daven's injury was his fault in two interviews with Det. Madsen. Appellant admitted that he may have been unduly rough on Daven, and that this mistreatment caused Daven's injury. In light of this confession and the fact that the testimony of appellant and Kimberly was contradicted by substantial other evidence, we cannot say that these statements by the prosecutor "permeate[d] the entire atmosphere of the trial." *Tumbleson,* 105 Ohio App.3d at 699, 664 N.E.2d at 1322. In addition, the trial court instructed the jury that counsel's arguments were not evidence. Such clear admonitions by the court may remedy any detriment caused by such misstatements by the prosecutor. See *State v. Maurer* (1984), 15 Ohio St.3d 239, 269, 473 N.E.2d 768, 794–795.

We cannot condone the prosecutor's choice of words or methods in his closing argument, but these improprieties do not rise to the level of reversible error. Accordingly, appellant's second assignment of error is overruled.

Assignment of Error No. 1:

"The appellant, Mr. Ross, was prejudiced by the ineffective representation of his counsel and thereby denied his right to a fair trial."

In his first assignment of error, appellant contends that he received ineffective assistance of counsel in violation of his Sixth Amendment rights. Appellant asserts that his trial counsel failed to object to allegedly prejudicial evidence, the instances of prosecutorial misconduct alleged in the second assignment of error, and incorrect jury instructions.

▮ To establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that trial counsel's performance was deficient; namely, that counsel's representation fell below the objective standard of reasonable competence under the circumstances. Second, a defendant must show that, as a result of this deficiency, he was prejudiced at trial. *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693; *State v. Mills* (1992), 62 Ohio St.3d 357, 370, 582 N.E.2d 972, 984–985. Prejudice will be found only if the defendant proves that there is a reasonable possibility that, but for the unprofessional errors, the result of the proceedings against the defendant would have been different. There must be a probability sufficient to undermine confidence in the outcome of the case. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus.

▮ Any questions regarding the effectiveness of counsel must be viewed in light of the evidence against the defendant, *id.* at 142, 538 N.E.2d at 379–380, with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694; *State v. Lytle* (1976), 48 Ohio St.2d 391, 397, 358 N.E.2d 623, 627, vacated in part on other grounds, *Lytle v. Ohio* (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154. Thus, it is not the role of the appellate court to second-guess the strategic decisions of trial counsel. *State v. Carter* (1995), 72 Ohio St.3d 545, 558, 651 N.E.2d 965, 977–978. Hindsight may not be used to distort the assessment of what was reasonable in light of trial counsel's perspective at the time. *State v. Cook* (1992), 65 Ohio St.3d 516, 524–525, 605 N.E.2d 70, 80–81.

▮ Appellant first argues that his trial counsel was ineffective by asking questions that opened the door for the state to present evidence regarding appellant's character. Appellant asserts that trial counsel should not have asked Kimberly whether any past conduct by appellant gave her cause for concern about Daven's safety. Kimberly responded that she had no such concerns about appellant, thus presenting opinion evidence of appellant's character. Pursuant to

Evid.R. 405,[5] this opinion could be challenged through specific instances of conduct.

The state sought to impeach Kimberly's opinion of appellant by cross-examining her with testimony presented at the earlier juvenile court proceedings. Kimberly testified that she made no allegations that appellant had abused Daven and that the juvenile court proceedings ended without a conclusion that appellant had abused Daven. Kimberly testified that the earlier proceedings concerned an accident in which Daven fell off the living room couch.

In light of Kimberly's testimony that she had no concerns about Daven's safety when in appellant's care, and that the juvenile court proceedings did not result in a judgment that appellant had abused Daven, we find that counsel was not ineffective for asking Kimberly for her opinion of appellant. Although the state attempted to imply that the earlier proceedings concerned allegations of abuse by appellant, Kimberly unambiguously testified that any injury Daven had suffered was due only to an accident.

 Appellant next argues that his trial counsel was ineffective for failing to secure Kimberly's attendance as a defense witness, which resulted in the trial court limiting appellant's questioning of Kimberly on recall examination. Although trial counsel did not subpoena Kimberly, he reserved the right to recall her as a witness, and the trial court ordered that she be available to testify. When recalling Kimberly, appellant's trial counsel informed the trial court that he had held off asking some questions pending Det. Madsen's testimony. Thus, trial counsel had not availed himself of the earlier opportunity to examine Kimberly based upon trial strategy.

 Pursuant to Evid.R. 611(A),[6] the trial court may impose reasonable restrictions upon the interrogation of witnesses where warranted. In the instant case, the trial court limited examination of Kimberly upon recall to forty-five minutes and to matters relating to impeaching Det. Madsen's testimony. The record makes clear that the trial court's decision was based upon factors other than a failure to subpoena Kimberly. Trial counsel then completed his planned

---

5. Evid.R. 405(A) provides:

"In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct."

6. R.C. 611(A) provides:

"The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

examination of Kimberly, using far less than the allotted time. At no time did trial counsel raise an objection to the trial court's ruling, instead stating that he understood the trial court's decision and the reasons for it.

We find that trial counsel was not ineffective for his planned strategy of recalling Kimberly as a witness. We also find that trial counsel was not ineffective for not challenging the trial court's limitations upon the recall examination, as trial counsel apparently fulfilled his purposes in recalling Kimberly as a witness.

Appellant next argues that trial counsel was ineffective for failing to object to Det. Madsen's testimony regarding how she tells if an interviewee is lying. Although trial counsel failed to object to this testimony, before Det. Madsen could finish her answer, the trial court *sua sponte* called a sidebar conference at which it excluded the evidence and admonished the state for attempting to introduce improper opinion testimony on credibility. The trial court then instructed the jury that Det. Madsen's partial answer was not to be considered. A jury is presumed to follow the instructions given to it by the trial judge. *State v. Loza* (1994), 71 Ohio St.3d 61, 75, 641 N.E.2d 1082. In light of the trial court's prompt action and curative instruction, any deficiency by trial counsel did not prejudice appellant.

Appellant next argues that his trial counsel was ineffective for failing to object to the improper comments alleged in appellant's second assignment of error. In light of our resolution of appellant's second assignment of error, any deficiency of trial counsel in failing to object to the prosecutor's closing remarks was not prejudicial to appellant.

Appellant next argues that his trial counsel was ineffective for failing to request a jury instruction on the defense of accident. Appellant asserts that such an instruction was warranted in light of comments by appellant in the second interview with Det. Madsen that Daven had been caught in the couch and comments made by trial counsel in closing arguments concerning this couch. Appellant argues that the logical inference from the argument that Daven could have gotten stuck in the couch is that appellant had raised the defense of accident at trial.

Accident is that which is unintentional and unwilled and implies a lack of criminal culpability. *State v. Gore* (Feb. 18, 1997), Franklin App. No. 96APC05–606, unreported, 1997 WL 72004. Accident will be found only if the defendant's action or the resulting injury were a "mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act." *State v. Glossip* (Mar. 18, 1991), Butler App. No. CA90–07–138, unreported, at 6, 1991 WL 35869. To be entitled

to a jury instruction on accident, there must be evidence to support the argument that appellant acted lawfully and that the result was unintended. *State v. Poole* (1973), 33 Ohio St.2d 18, 20, 62 O.O.2d 340, 341, 294 N.E.2d 888, 889–890.

Appellant did not demonstrate that he would have been entitled to a jury instruction on accident, even had trial counsel requested one, or that such an instruction would have altered the outcome of the trial. Although appellant did present evidence that breaking Daven's leg was an unintended result of his conduct, other evidence supported the conclusion that appellant's conduct was intentional and that such conduct exceeded that which would have been reasonable. By his own admission, appellant willfully handled Daven's leg in a manner which could reasonably result in injury. Appellant admitted that he probably used excessive force in handling Daven. Medical testimony established that the amount of force required to break Daven's leg would have to be far greater than that appellant initially claimed that he used. Even had a jury instruction on accident been requested or given, appellant has not demonstrated how the outcome of his trial would have been any different.

Appellant last argues that his trial counsel was ineffective for not objecting to the jury instruction given with regard to his prior conviction for criminal trespass. The challenged jury instruction reads:

"Evidence was received that the defendant was convicted of criminal trespass. This evidence was not received, and you may not consider it, as evidence of the character of the defendant in order to show he acted in conformity with that character."

Appellant contends that he was prejudiced because the instruction failed to include, after the first sentence, "That evidence was received only for a limited purpose."

The challenged instruction is substantially similar to the instruction included in 4 Ohio Jury Instructions (1997), Section 402.61, at 32. Although the trial court failed to include the phrase "received only for a limited purpose," the charge clearly informed the jury that it could not consider appellant's prior conviction as proof that he acted in conformity with character. The jury is presumed to have followed the instructions given unless appellant can demonstrate otherwise. *Loza*, 71 Ohio St.3d at 75, 641 N.E.2d at 1100. Trial counsel was under no obligation to object to this proper jury instruction. *Lott*, 51 Ohio St.3d at 175–176, 555 N.E.2d at 308–309.

We find that appellant was not denied the effective assistance of counsel. Accordingly, appellant's first assignment of error is overruled.

Assignment of Error No. 3:

"The trial court erred when it found that the offense of felonious assault and the offense of child endangering are not allied offenses of similar import."

In his final assignment of error, appellant contends that the trial court should have ruled the offenses of felonious assault and child endangering are allied offenses of similar import. Appellant argues that he should have been convicted of only one offense.

Allied offenses of similar import are governed by R.C. 2941.25, which provides:

"(A) Where the same conduct by the defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

In *State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, the Supreme Court of Ohio recently reconsidered the issue of how to apply R.C. 2941.25(A) when determining whether two or more offenses constitute allied offenses of similar import. Prior to *Rance,* the test used by the courts was that set forth in *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 549 N.E.2d 520, syllabus, overruled, *Rance,* 85 Ohio St.3d 632, 710 N.E.2d 699:

"Under R.C. 2941.25, a two-tiered test must be undertaken to determine whether two or more crimes are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's conduct is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses."

In *Vazirani,* the court compared the elements of the two crimes charged by reference to the particular facts alleged in the indictment. *Id.* at 83, 549 N.E.2d at 521–522. Later cases compared the elements of the charged offenses in the abstract, without reference to facts alleged in the indictment. *State v. Richey* (1992), 64 Ohio St.3d 353, 369, 595 N.E.2d 915, 928–929. In the past, this court has applied the elements test in a manner consistent with *Richey. State v. Sword* (July 6, 1999), Fayette App. No. CA99–03–007, unreported, 1999 WL 527756;

*State v. Mangrum* (Mar. 21, 1994), Clermont App. No. CA93–08–062, unreported, 1994 WL 93155.

In *Rance,* the Supreme Court of Ohio reconsidered whether the elements test should be conducted in terms of the facts of the specific case or in terms of the statutory elements of the offenses in the abstract. The court ruled that an analysis of the elements in the abstract was proper, overruling *Vazirani* and language to the contrary in other cases. 85 Ohio St.3d 632, 710 N.E.2d 699, paragraph one of the syllabus. Under *Rance,* when determining whether two or more offenses are allied offenses of similar import, the court "should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes 'correspond to such a degree that the commission of one crime will result in the commission of the other.' (Citation omitted.) And if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. R.C. 2941.25(B)." *Id.* at 638–639, 710 N.E.2d at 705.

Appellant cites *State v. Madison* (June 22, 1993), Franklin App. No. 92AP–1461, unreported, 1993 WL 238941, for the proposition that felonious assault in violation of R.C. 2903.11(A)(1) and child endangering in violation of R.C. 2919.22(B)(2) are allied offenses of similar import. The *Madison* court's analysis of the offenses in that case was based upon the factual allegations made by the prosecution, following the rule set forth in *Vazirani.* In light of the Supreme Court of Ohio's disapproval of this fact-based analysis, we find *Madison* to be unpersuasive.

Courts that have undertaken an examination of the elements of the two offenses in the abstract, as mandated by *Rance,* have found that felonious assault under R.C. 2903.11(A)(1) and child endangering under R.C. 2919.22(B)(2) are not allied offenses of similar import. In *State v. Anderson* (1984), 16 Ohio App.3d 251, 16 OBR 275, 475 N.E.2d 492, overruled on other grounds, *State v. Campbell* (1991), 74 Ohio App.3d 352, 598 N.E.2d 1244, the defendant was convicted of felonious assault under R.C. 2903.11(A) and child endangering under a former version of R.C. 2919.22(B)(1), which at that time required proof that the defendant "tortured or cruelly abused a child under eighteen years of age." *Id.* at 254, 16 OBR at 277, 475 N.E.2d at 495–496. The court ruled that the offenses were not allied offenses of similar import, finding:

"[T]he offense of child endangering has, under the definition set forth in R.C. 2919.22(B)(1), been marked by the legislature with certain attributes so unique that it must be construed as a crime wholly separate and distinct from that of felonious assault. In this regard, we note specifically that the legislature has chosen to bestow special protection upon children by crafting an offense that, in essence, involves the infliction of torture or cruel physical abuse on those who

have yet to attain the age of majority. Because the peculiar elements at the heart of the crime play no essential part in the definition of felonious assault under R.C. 2903.11(A), it is fair to say that an act of felonious assault will not perforce result in an act of child endangering." *Id.* See, also, *State v. Parish* (Oct. 31, 1995), Hancock App. No. 5–95–11, unreported, 1995 WL 641268.

We agree with the reasoning of the court in *Anderson* that child endangering under R.C. 2919.22(B)(2) requires proof of an element distinct from the elements of felonious assault under R.C. 2903.11(A)(1). We find that these offenses are not allied offenses of similar import, and appellant was properly convicted of both offenses. Accordingly, appellant's third assignment of error is overruled.

*Judgment affirmed.*

POWELL, P.J., and VALEN, J., concur.