DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Sheldon Vintson, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} In the early morning hours of November 7, 2005, Appellant, Sheldon Vintson, was riding his bicycle home from the Oberlin Inn, where he had spent the evening drinking and watching a football game. Vintson rode past 66 N. Pleasant St., where three Oberlin College students were playing a drinking game on the porch. The students had been throwing beer bottles off the porch and into the street and sidewalk. Vintson stopped in front of the house to confront the students *Page 2 
because he thought they were throwing bottles at him. Vintson accused the students of throwing beer bottles at him and popping the tires on his bike. A verbal confrontation ensued. Vintson told them "I'll show you." Vintson left the house and went to his home to retrieve his shotgun. Shortly thereafter, Vintson returned to 66 N. Pleasant St. and fired a shot into the house. Vintson claims that the shot was fired accidentally. He then remounted his bicycle and rode towards his house.
 {¶ 3} One of the students immediately called the police to report that Vintson had shot at them. The police arrived at Vintson's house shortly before he returned. He saw the police as he approached his house. Vintson held the shotgun behind his back with his left hand and maneuvered the bicycle with his right hand. After repeated police orders to stop bicycling and lower himself and his gun to the ground, Vintson eventually complied. The police arrested Vintson.
 {¶ 4} In December of 2005, Vintson was indicted on one count of having a weapon while under disability, in violation of R.C. 2923.13(A)(2), a felony of the third degree, one count of obstructing official business, in violation of R.C. 2921.31(A), a felony of the fifth degree, one count of improper discharge of a firearm into a habitation, in violation of R.C. 2923.161(A)(1), a felony of the second degree, and one count of unlawful possession of a dangerous ordnance, in violation of R.C.2923.17(A), a felony of the fifth degree. All charges contained firearm specifications. *Page 3 
 {¶ 5} Vintson's case proceeded to trial before a jury on August 7, 2006. On the second day of trial, the State moved to dismiss the unlawful possession of a dangerous ordnance charge. The jury convicted Vintson on the remaining three counts. On October 16, 2006, Vintson was sentenced to three years incarceration on the having a weapon while under disability conviction, eight months incarceration on the obstructing official business conviction and six years incarceration for the improper discharge of a firearm into a habitation conviction. Vintson was ordered to serve these sentences concurrently. Vintson was sentenced to an additional three years incarceration for the firearm specifications for an aggregate sentence of nine years incarceration. Vintson timely appealed his convictions, raising three assignments of error for our review. We have combined two of Vintson's assignments of error to facilitate our review.
 II. ASSIGNMENT OF ERROR I "THE CONVICTION FOR IMPROPERLY DISCHARGING A FIREARM AT OR INTO A HABITATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 ASSIGNMENT OF ERROR II "THE CONVICTION FOR OBSTRUCTING OFFICIAL BUSINESS WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AGAINST THE SUFFICIENCY OF THE EVIDENCE."
 {¶ 6} In his first assignment of error, Vintson contends that his conviction for improperly discharging a firearm at or into a habitation was against the *Page 4 
manifest weight of the evidence. In his second assignment of error, Vintson asserts that his conviction for obstructing official business was against the manifest weight of the evidence and was not supported by the sufficiency of the evidence. We disagree.
 {¶ 7} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id.
 {¶ 8} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2. *Page 5 
Therefore, we will address Vintson's claims that his convictions for improperly discharging a firearm and obstructing official business are against the manifest weight of the evidence first, as they are dispositive of both Vintson's first assignment of error and his claim of insufficiency in his second assignment of error.
 {¶ 9} When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. The Ohio Supreme Court recently examined the criminal manifest weight of the evidence standard in State v. Wilson,113 Ohio St.3d 382, 2007-Ohio-2202. In Wilson, the Court reaffirmed theThompkins standard, explaining:
 "[A] reviewing court asks whose evidence is more persuasive-the state's or the defendant's? * * * [Although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." (Internal citations and quotations omitted.) Id. at ¶ 25. *Page 6 
 {¶ 10} The jury convicted Vintson of one count of improper discharge of a firearm into a habitation in violation of R.C. 2923.161(A)(1), which provides:
 "No person, without privilege to do so, shall knowingly do any of the following:
 "Discharge a firearm at or into an occupied structure that is a permanent or temporary habitation of any individual[.]"
Vintson was also convicted of one count of obstructing official business, in violation of R.C. 2921.31(A). R.C. 2921.31(A) provides:
 "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."
Trial Testimony {¶ 11} Zachary Lewis, one of the Oberlin College students involved in the altercation, testified for the State. Lewis testified that when Vintson returned to the house, he noticed that Vintson was holding his hands behind his back. Vintson then pulled out the shotgun. The other two students, Andrew Estep and Vance Murphy, yelled at Vintson to put the gun away. Lewis jumped over the side of the porch onto the gravel driveway. According to Lewis, after Vintson discharged the gun, Vintson remained in the yard, yelling "`I'm not a punk, that's what's up. I'm not a punk.'"
 {¶ 12} Andrew Estep also testified regarding his interaction with Vintson. According to Estep, when Vintson returned to the house, he yelled "`what's up *Page 7 
now? What's up now?'", and then he fired the shotgun. Estep observed Vintson fire the gun. After Vintson fired the gun, he continued "taunting" the students, saying "`what's up now? I f***ing showed you what's up now.'"
 {¶ 13} Vance Murphy, the third college student involved in the altercation, also testified. Murphy testified that when Vintson returned to his house, he saw him pull out something from behind his back. Once Murphy realized that Vintson had a gun, Murphy tried "to get him to settle down." Murphy also observed Vintson fire off a shot towards where Lewis was standing.
 {¶ 14} Sgt. McCloskey, an Oberlin police officer, testified that he responded to a call that there were shots fired at some college students at 66 N. Pleasant St. When he arrived at the scene, two other Oberlin police officers who responded to the students' call were placing Vintson under arrest. Sgt. McCloskey secured the weapon at the scene. He testified that the gun was a 12-gauge double barrel shotgun with side-by-side barrels and external hammers. Sgt. McCloskey stated that the left chamber of the shotgun contained no live ammunition while the right chamber contained live ammunition. In his examination of the shotgun, Sgt. McCloskey determined that the left barrel had recently been fired.
 {¶ 15} Sgt. McCloskey test fired the shotgun to verify that the gun was functional. According to Sgt. McCloskey, the gun could not have accidentally discharged because the trigger of the shotgun could only fire a single round after the hammer was first completely pulled back. Further, Sgt. McCloskey testified *Page 8 
that the hammer on the shotgun was extremely stiff and could only be pulled back with a forceful action. Sgt. McCloskey concluded that it was nearly impossible for the gun to have accidentally misfired.
 {¶ 16} Sgt. Patrick Durica, also an officer with the Oberlin Police Department, testified regarding his response to the students' call. Upon responding to the corner of S. Pleasant St. and E. Vine St., Sgt. Durica observed a person matching the description of the suspect. This person was later identified as Vintson. At that point, Sgt. Durica and Patrol Officer Reitz, whom Sgt. Durica was training at the time, exited their cruisers with their weapons drawn. The officers repeatedly ordered Vintson to stop and show them his hands. Vintson continued riding his bicycle towards them. When Sgt. Durica first ordered Vintson to stop, he was approximately 40 yards from them. Vintson came within approximately ten feet of Officer Reitz before he finally stopped. Sgt. Durica testified that Vintson came so close to him that he thought he might have to shoot Vintson. Sgt. Durica testified that he "actually had pressure on [his] trigger." He explained that the only reason he did not pull the trigger was because he could not see the gun and he did not want to shoot Vintson if Vintson did not actually have a weapon. Sgt. Durica testified that he ordered Vintson to stop so many times that he could not even estimate a number.
 {¶ 17} After he stopped his bicycle, Vintson kept his left hand behind his back. The officers again repeatedly ordered Vintson to show them his hands. *Page 9 
Vintson slowly lowered his hands. The officers observed that he had a double barreled shotgun in his left hand. Vintson had the gun pointed at the ground. After the officers twice ordered Vintson to drop the gun, he laid it on the ground. The officers forcibly removed Vintson from his bicycle, escorted him to the ground and handcuffed him.
 {¶ 18} After the officers secured Vintson, they drove him to the students' home where the students positively identified him as the person who fired the shotgun. Sgt. Durica performed a gunshot residue test on Vintson. The results indicated that Vintson had fired the shotgun. Sgt. Durica also testified that he had examined the bicycle and that none of the tires were flattened.
 {¶ 19} Vintson testified at trial but presented no witnesses on his behalf. He testified that on November 6, 2005, he rode his bicycle to the Oberlin Inn at approximately 7:30 p.m. to watch a football game. He testified that while there, he consumed about three beers and a shot of liquor. Vintson acknowledged that he has prior convictions for aggravated robbery, grand theft auto and attempted breaking and entering. Vintson left the bar at about 1:15 a.m. According to Vintson, as he was riding his bicycle past 66 N. Pleasant St., he was struck by an object. He thought he had been hit by a lead pipe or a similar object. Vintson had observed a few guys on the porch at 66 N. Pleasant St. and assumed that one of them had thrown something at him. He stopped bicycling and approached the guys. He asked them which one had thrown something at him. Vintson stated that *Page 10 
one of the guys said "`get the hell out of here * * * [n]o one hit you.'" He also testified that one of the guys said "`[y]ou lucky it wasn't a bullet.'" To which, Vintson responded, "oh, you want to play with guns? * * * I left and came back with my gun."
 {¶ 20} Vintson testified that when he retrieved the gun from his house, he did not even realize that the gun was loaded. Vintson carried the gun on his side as he bicycled back to 66 N. Pleasant St. He parked the bike on the side of the street near the driveway. He noticed the guys were gathered on the porch, laughing. He then walked up to the house and said "now who's laughing?" He testified that he tried to pull the gun out from behind his back so that the guys could see it. He explained that "you don't have to cock the gun back to make it fire. My hand was not on the trigger. The trigger, if you just pull it back and let it go, it will go off. What happened, it caught the back of my hood jacket and it snapped it loose, and, pow, it went off." According to Vintson, the gun fired into the ground. He testified that he did not intend to fire the gun, let alone shoot anyone.
 {¶ 21} After he fired the gun, Vintson rode his bicycle home. As he approached his house, he could see an officer in a police car approaching his house. He testified that the officers exited their vehicles and ordered him off the bike and onto the ground. Vintson stated that the bike was "coasting" and that he "couldn't hit the brakes, so [he] let his feet stop [him][.]" He eventually *Page 11 
dismounted the bike and laid the bike and gun on the ground. Thereafter, Vintson lay on the ground on his stomach. The police handcuffed him and took him to the police station.
Improper Discharge of a Firearm into a Habitation {¶ 22} On appeal, Vintson concedes that the gun discharged into the home however, he contends that the discharge was accidental. The requisite mental state for the commission of improperly discharging a firearm into a habitation is "knowingly." "Knowingly" is defined under R.C. 2901.22(B), which provides:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 23} Three of the witnesses' testimony contradicts Vintson's assertion that the gun accidentally discharged. Estep and Murphy personally observed Vintson fire the gun. Sgt. McCloskey's testimony also contravenes Vintson's allegation that the gun accidentally discharged. According to Sgt. McCloskey, the trigger of the shotgun could only fire a single round after the hammer was first completely pulled back. Sgt. McCloskey testified that the hammer could only be pulled back with a forceful action. Given the multiple actions required to fire the shotgun, he concluded that it was nearly impossible for the gun to have accidentally misfired. *Page 12 
 {¶ 24} Moreover, Vintson's reaction to the discharge demonstrates that he knowingly fired the shotgun. After he fired the gun, he continued "taunting" the students, saying "`what's up now? I f***ing showed you what's up now.'" This is not a case where the evidence regarding the discharge of the firearm weighs heavily in favor of Vintson, warranting a new trial. Accordingly, we find that Vintson's conviction for improper discharge of a firearm into a habitation is supported by the manifest weight of the evidence.
Obstructing Official Business {¶ 25} Vintson argues that his conviction for obstructing official business is against the manifest weight of the evidence and not based on sufficient evidence because he made no affirmative act which would support a finding that he was obstructing official business. He contends that he merely failed to timely respond to the officers' orders. The record reflects otherwise. Sgt. Durica testified that he and Officer Reitz first observed Vintson when he was approximately forty yards from them. They repeatedly ordered him to stop and show them his hands. The record demonstrates that Vintson acted affirmatively in ignoring their commands and continuing to ride his bicycle towards them. He came within approximately ten feet of Officer Reitz before he finally stopped. Vintson's actions caused Sgt. Durica to place pressure on the trigger of his gun.
 {¶ 26} Thereafter, Vintson ignored repeated orders from the police to show them his hands. Once the officers discovered that Vintson was carrying a firearm, *Page 13 
they twice ordered him to drop the gun before he complied. Eventually, the officers forcibly removed Vintson from his bicycle, escorted him to the ground and handcuffed him.
 {¶ 27} Vintson's significant delay in obeying the officers' repeated orders impeded the officers in the performance of their lawful duties in violation of R.C. 2921.31. State v. Brickner-Latham, 3rd Dist. No. 13-05-26, 2006-Ohio-609, at ¶ 27, citing State v. Davis (2000),140 Ohio App.3d 751, 753; State v. Harris, 10th Dist. No. 05AP-27,2005-Ohio-4553, at ¶ 25.
 {¶ 28} We find that the jury's verdict convicting Vintson of obstructing official business was not against the manifest weight of the evidence. As this Court has disposed of Vintson's challenge to the weight of the evidence, we similarly dispose of his challenge to its sufficiency. Roberts, supra, at *2. Necessarily included in this Court's determination that the jury verdict was not against the manifest weight of the evidence, is a determination that the evidence was also sufficient to support the conviction. Id.
 {¶ 29} Accordingly, Vintson's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND DENIED VINTSON HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL WHEN IT REFUSED HIS REQUEST FOR AN `ACCIDENT' JURY INSTRUCTION THEREBY VIOLATING 
VINTSON'S RIGHTS UNDER THE SIXTH AND *Page 14 FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, § 10 OF THE OHIO CONSTITUTION."
 {¶ 30} In his third assignment of error, Vintson contends that the trial court committed prejudicial error and denied him his constitutional right to a fair trial when it refused his request for an "accident" jury instruction thereby violating his rights under the Sixth
and Fourteenth Amendments to the U.S. and Ohio Constitutions. We disagree.
 {¶ 31} Accident is not an affirmative defense. Jones v. State (1894),51 Ohio St. 331, 342. Rather, the defense of accident is akin to a denial that an unlawful act was committed; it is not a justification for the defendant's admitted conduct. State v. Poole (1973),33 Ohio St.2d 18, 20. "Accident is that which is unintentional and unwilled and implies a lack of criminal culpability." State v. Ross (1999),135 Ohio App.3d 262, 276. In order for an accident to occur, it must have been a physical event which would not be reasonably anticipated as a result of a lawful act. Id. A party is entitled to an accident instruction when evidence is presented at trial that the party's action was an accident.State v. Thomas (1988), 40 Ohio St.3d 213, 218.
 {¶ 32} We find no abuse of discretion in the trial court's decision not to instruct the jury regarding accident. An accident instruction is only warranted when an event occurs "which would not be reasonably anticipated as a result of a lawful act." (Emphasis sic.) State v.Denton (Sept. 30, 1993), 10th Dist. No. 93AP-603, at *1. SeeRoss, 135 Ohio App.3d at 276. Here, as Vintson conceded *Page 15 
at trial, his possession of a firearm was unlawful because he has a prior conviction for aggravated robbery. Consequently, there was no dispute that Vintson's act of possessing the firearm was unlawful. As the trial court explained, any act occurring while Vintson illegally possessed the firearm could not meet the legal definition of accident. Accordingly, we find no error in the trial court refusal to provide an accident instruction. Vintson's third assignment of error is overruled.
 III. {¶ 33} Vintson's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 16 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
WHITMORE, P. J. CARR, J. CONCUR.
 *Page 1