JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Michael Potter, appeals the verdict of the Cuyahoga County Court of Common Pleas, Criminal Division, which found him guilty of felonious assault by causing serious physical harm, in violation of R.C. 2903.11, and endangering children by torture or cruel abuse, in violation of R.C. 2919.22(B)(2). He was sentenced to four years on each conviction, to be served concurrent to one another.
 {¶ 2} Potter is the father of the minor victim, who was seven months old at the time of the instant incident. On April 10, 2001, Potter stayed at home with his daughters while the children's mother went to work.[1] According to Potter, on the morning in question, he had given his younger daughter, the victim, a bottle and placed her in a reclining chair in the living room. While his younger daughter was in the living room, he went into the kitchen to prepare some oatmeal. He stated that, as he prepared the oatmeal, he heard a "thump." He rushed back into the living room to find his younger daughter lying on the living room floor and unresponsive.
 {¶ 3} As a result of the alleged "fall," Potter went to the apartment of another tenant in the complex where his family resided to use their telephone to call 911 for emergency services for his daughter. His daughter was thereafter transported to Rainbow Babies and Children's Hospital ("Rainbow Babies"). After she was admitted, it was determined that she had an evolsion fracture[2] to her right forearm, a subdural hematoma, subdural hemorrhage and subarchnoid hemorrhage. The other injuries involved internal bleeding to the victim's head. In light of the excessive injuries, the hospital personnel suspected that the injuries could not have been the result of a fall as Potter had described, and the authorities were notified.
 {¶ 4} After extensive investigation, Potter was charged with the above-stated offenses. The matter proceeded to trial, and he was found guilty and sentenced. It is from this conviction that Potter now appeals. For the following reasons, we find his appeal to be without merit.
 {¶ 5} The appellant presents six assignments of error for this court's review. Having a common basis in both law and fact, the appellant's first two assignments of error will be addressed together. They state:
 {¶ 6} "I. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that Mr. Potter was guilty of felonious assault."
 {¶ 7} "II. The evidence was insufficient to support a conviction for child endangering as charged in count two."
 {¶ 8} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins (1997),78 Ohio St.3d 380, 390. On review, this court is to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against the defendant would support a conviction. Id. The relevant inquiry is whether, after viewing all the evidence in a lightmost favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Emphasis added.) State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 9} The appellant was convicted of felonious assault, in violation of R.C. 2903.11, which states in pertinent part:
 {¶ 10} "(A) No person shall knowingly do either of the following:
 {¶ 11} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 12} "(2) Cause or attempt to cause physical harm to another * * *."
 {¶ 13} Additionally, the appellant was convicted of endangering children by torture or cruel abuse, in violation of R.C. 2919.22(B)(2), which states in pertinent part:
 {¶ 14} "(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:
 {¶ 15} "* * *
 {¶ 16} "(2) Torture or cruelly abuse the child; * * *."
 {¶ 17} Prior to finding a defendant guilty of violating R.C.2919.22(B)(2), the state must prove recklessness on the part of the defendant, as defined in R.C. 2901.22(C). State v. Adams (1980),62 Ohio St.2d 151. The state has the burden of establishing all material elements of a crime by proof beyond a reasonable doubt. Mullaney v.Wilbur (1975), 421 U.S. 684.[3]
 {¶ 18} In reviewing the record, the State proffered the testimony of four medical experts, each indicating that the injuries suffered by the victim did not result from a fall, as alleged by the appellant; but, rather, the doctors opined that the injuries were the result of the child being intentionally shaken. The State offered the testimony of Dr. Kaleford Hong, senior radiology resident at Rainbow Babies, who testified that the injuries could only have been caused by some type of excessive force of trauma, such as shaking. The State offered the testimony of Dr. Deana Dahl-Grove, the pediatric attending physician in the emergency room on the day of the incident, who testified that the injuries suffered by the victim were inconsistent with the appellant's explanation of how the injuries were incurred. The State offered the testimony of Dr. Amy Jeffery, a pediatric ophthalmologist at Rainbow Babies, who described the severity of the victim's injuries as being consistent with that of Shaken Baby Syndrome and not from falling from a recliner. Further, the State offered the testimony of Dr. Lolita McDavid, the director of child advocacy and protection at Rainbow Babies and an expert in Shaken Baby Syndrome, who testified that it is not uncommon for victims of Shaken Baby Syndrome not to exhibit external bruises.
 {¶ 19} In sum, the testimony of the State's medical experts indicated that, to a reasonable degree of medical certainty, it was unlikely that the victim's injuries were the result of the appellant's description of the events; but, rather, the State's experts opined that the cause of the victim's injuries was the result of her being violently shaken or a similar trauma.
 {¶ 20} In response, the appellant offered the testimony of Dr. John Plunkett, the laboratory and medical education director at Regina Hospital in Hastings, Minnesota, and assistant coroner for the Minnesota Regional Coroner's Office. Dr. Plunkett testified that he reviewed the victim's medical records and concluded that child abuse was not the only explanation for the injuries. Dr. Plunkett opined that the internal head injuries were not consistent with being shaken, but required an impact with a non-yielding surface, such as a floor. Additionally, Dr. Plunkett testified that the arm injury was not consistent with being shaken, nor was the goose-egg bump on the back of the victim's head.
 {¶ 21} In light of the abundant testimony and evidence offered at trial, we cannot conclude that the convictions are not supported by sufficient evidence. At trial, the State offered the testimony of four doctors, each testifying to a reasonable degree of medical certainty that it was extremely unlikely that the victim's injuries were sustained in the manner described by the appellant. Additionally, these same doctors testified to a reasonable degree of medical certainty that it was most probable that the victim's injuries were caused by a violent trauma, such as shaking. Further, the medical testimony reflected a clear consensus that shaking a baby is an overwhelming cause of trauma and injuries consistent with the injuries suffered by the victim.
 {¶ 22} Moreover, this act of shaking a child of seven months of age was clearly knowingly and recklessly committed, as evidenced by the substantial medical testimony offered at trial and in light of the fact that the victim was unable to defend herself from the attack.
 {¶ 23} Accordingly, sufficient evidence exists on which the jury based its convictions. In viewing the evidence in a light most favorable to the prosecution, sufficient evidence existed for the jury to conclude beyond a reasonable doubt that the appellant was guilty of the charged offenses. Therefore, the appellant's first and second assignments of error are without merit.
 {¶ 24} The appellant's third assignment of error states:
 {¶ 25} "III. The investigating detective should not have been permitted to offer his opinion about Mr. Potter's truthfulness."
 {¶ 26} The appellant argues that his federal and state constitutional and due process rights were violated because the lower court permitted Detective Boresz to testify as to the truthfulness of the appellant's version of the events. The appellant points to the following colloquy as evidence that Detective Boresz tainted the jury by testifying that he did not believe the appellant was being truthful.
 {¶ 27} "Q. How would you describe Mr. Potter's demeanor that day?
 {¶ 28} "Mr. Sondik: Objection, your Honor.
 {¶ 29} "Court: Overruled.
 {¶ 30} "Detective Boresz: When we first went in, he was sitting there talking to Patrolman Bruening and to me. He seemed to be more nervous than anything else. His voice was a little shaky, and they have what they call cotton mouth when somebody starts getting nervous, like I don't know how you describe it, but your mouth dries out basically, usually from being nervous, and at one point he was describing what happened to [the victim], and he put his hands in — or head in his hands and appeared to be crying, but there weren't any tears, it just appeared to be forced, really didn't look genuine to us.
 {¶ 31} "Q. Did that arouse any suspicions in your mind at that time?
 {¶ 32} "Detective Boresz: Yes, it did.
 {¶ 33} "Q. What suspicions did it arouse?
 {¶ 34} "Detective Boresz: It just didn't seem — I mean, at that point I didn't know what the injuries were like that.
 {¶ 35} "Mr. Sondik: Objection.
 {¶ 36} "The Court: Overruled.
 {¶ 37} "Detective Boresz: It just seemed that possibly everything he was telling us maybe wasn't truthful."
 {¶ 38} Specifically, the appellant contends that the one statement in which the detective stated that "possibly" the appellant's version of the events was not completely truthful was so egregious as to constitute reversible error. We note the opinion of a witness as to whether another witness is being truthful is inadmissible. State v. Miller (Jan. 26, 2001), Montgomery App. No. 18102. In our system of justice, it is the fact finder, not the witness, who bears the burden of assessing the credibility and veracity of the witnesses. State v. Boston (1989),46 Ohio St.3d 108. Moreover, jurors are likely to perceive police officers as expert witnesses, especially when such officers are giving opinions about the present case based upon their perceived experiences with other cases. State v. Miller, supra. However, in determining whether an error was prejudicial or harmless, a reviewing court must first read the entire record, disregarding the objectionable material. If there is overwhelming evidence of the appellant's guilt, aside from the disputed material, then it must hold that the error is not prejudicial but is harmless beyond a reasonable doubt and affirm the trial court's judgment. Crim.R. 52, Chapman v. California (1967), 286 U.S. 18; SeeState v. Davis (1975), 44 Ohio App.2d 335; State v. Dunaway (Oct. 31, 1996), Cuyahoga App. No. 69561.
 {¶ 39} At trial, Detective Boresz stated that the version of events as explained by the appellant "maybe" was not truthful, in his opinion based on his observations. Clearly, the detective testified to his opinion concerning the appellant's truthfulness, and, accordingly, his testimony with regard to the appellant's veracity was admitted in error. Nevertheless, we cannot conclude that the error was so egregious as to warrant a reversal of the jury's verdict. In reviewing the entire record, and disregarding the one sentence of objectionable testimony, there is overwhelming evidence of the appellant's guilt. As previously stated, the State offered substantial medical testimony which indicated to a reasonable degree of medical certainty that the cause of the victim's injuries was the result of a violent trauma, such as being shaken. The admission of the detective's testimony was harmless at best.
 {¶ 40} Accordingly, the appellant's third assignment of error is without merit.
 {¶ 41} "IV. The prosecutor's remarks during closing arguments deprived the appellant of a fair trial."
 {¶ 42} In his fourth assignment of error, the appellant argues that comments made by the prosecutor during closing were so prejudicial as to warrant reversal of his conviction. The appellant points to three instances of alleged misconduct by the prosecutor during closing arguments. First, he contends that the prosecutor referred to the statistical likelihood of the appellant's guilt. Second, the appellant contends that the prosecutor asked the jurors whether they would entrust their children to the appellant. Third, the appellant contends that the prosecutor suggested that the defense knew that Dr. Plunkett, the appellant's expert, did not hold his opinions to a reasonable degree of medical certainty.
 {¶ 43} We note that the appellant failed to object to the prosecutor's closing argument at trial. In the absence of objection, any error is deemed to have been waived unless it constitutes plain error. To constitute plain error, the error must be obvious on the record, palpable and fundamental so that it should have been apparent to the trial court without objection. See State v. Tichon (1995), 102 Ohio App.3d 758, 767. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996),75 Ohio St.3d 163, 166. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83.
 {¶ 44} The prosecution is normally entitled to a certain degree of latitude in its concluding remarks. State v. Woodards (1966),6 Ohio St.2d 14, 26, certiorari denied (1966), 385 U.S. 930,87 S.Ct. 289; State v. Liberatore (1982), 69 Ohio St.2d 583, 589. A prosecutor is at liberty to prosecute with earnestness and vigor, striking hard blows, but may not strike foul ones. Berger v. United States (1935), 295 U.S. 78,88, 55 S.Ct. 629, 633. The prosecutor is a servant of the law whose interest in a prosecution is not merely to emerge victorious but to see that justice shall be done. It is a prosecutor's duty in closing arguments to avoid efforts to obtain a conviction by going beyond the evidence which is before the jury. United States v. Dorr (C.A. 5, 1981),636 F.2d 117.
 {¶ 45} The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. Dorr, supra, at 120. To begin with, the prosecution must avoid insinuations and assertions which are calculated to mislead the jury. Berger, supra,295 U.S. at 88, 55 S.Ct. at 633. It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. State v. Thayer (1931), 124 Ohio St. 1; DR 7-106(C)(4) of the Code of Professional Responsibility. Moreover, the code provides that an attorney is not to allude to matters which will not be supported by admissible evidence, DR 7-106(C)(1), and "* * * [a] lawyer should not make unfair or derogatory personal reference to opposing counsel. * * *." E.C. 7-37.
 {¶ 46} Generally, conduct of a prosecuting attorney at trial shall not be grounds for reversal unless the conduct deprives the defendant of a fair trial. State v. Apanovich (1987), 33 Ohio St.3d 19; State v. Papp
(1978), 64 Ohio App.2d 203. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. State v.Smith (1984), 14 Ohio St.3d 13. In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury still would have found the appellant guilty. State v. Maurer (1984), 15 Ohio St.3d 239, 266;State v. Dixon (Mar. 13, 1997), Cuyahoga App. No. 68338. The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smithv. Phillips (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947,71 L.Ed.2d 78, 87.
 {¶ 47} In addressing the appellant's first allegation of prosecutorial misconduct, we cannot conclude that the comments made by the prosecutor were so improper or prejudicial as to substantially prejudice the appellant's right to a fair trial. The appellant contends that the prosecution stated, during closing arguments, that Dr. Plunkett's testimony that there existed a small chance of the victim having been injured by an accidental fall could not be considered in determining reasonable doubt because it was so statistically improbable. However, in reviewing the portions of the transcript to which the appellant points, we cannot find any evidence of prosecutorial misconduct with regard to statistical evidence as asserted by the appellant.
 {¶ 48} The appellant cites to page 607 of the transcript as evidence of this error, but glaringly fails to cite to what portion of page 607 on which he relies. Nevertheless, in reviewing page 607, the only indication of statistical testimony is contained in the following colloquy by the prosecutor to the jury:
 {¶ 49} "We [the State] have to provide you [the jury] with proof of such a character that an ordinary person would be willing to rely upon it in the most important of his or her own affairs, willing to rely upon it, not be absolutely convinced beyond any shadow of a doubt. So if you believe Dr. Plunkett's theory applies in this case, and that the four doctors from Rainbow Babies and Children have to be wrong, then you're holding the State to a burden way beyond a reasonable doubt, you're holding us to an unfair burden because the best his so-called expert could do is say it's rare."
 {¶ 50} The appellant posits that the prosecutor inferred that the appellant's expert's opinion is in some manner statistically improbable because the State offered the testimony of four doctors, which directly conflicted with the testimony of the appellant's expert. In following the appellant's reasoning, the appellant was therefore prejudiced because the prosecutor inferred that the appellant's expert's version was statistically improbable.
 {¶ 51} We decline to endorse the appellant's reasoning after review. Simply, the prosecutor, during close, stated that the burden of proof in the instant matter was "beyond a reasonable doubt," and if the State was held to a standard by which every possibility would be excluded before a finding of guilt could be made, then the burden on the State would no longer be one of "beyond a reasonable doubt," but, rather, "beyond a shadow of a doubt." In no manner did the prosecutor state that the appellant's guilt was more statistically probable than not.
 {¶ 52} The appellant's reliance on People v. Collins (1968),68 Cal.2d 319, 330, is misguided because the case is easily distinguishable to the case at hand. In Collins, the prosecutor called an instructor of mathematics as an expert witness to establish that there was an overwhelming probability that the crime was committed by any person answering the distinctive characteristics of the defendant. The defendant was convicted and appealed arguing that a trial by mathematics was irrelevant, immaterial, an invasion of the province of the jury, and based on unfounded assumptions so confusing to the jury and counsel for the defense. The Supreme Court of California reversed the conviction holding that a trial by mathematics so distorted the role of the jury and so disadvantaged counsel for the defense as to constitute in itself a miscarriage of justice. Specifically, the court reasoned that the argument of the prosecutor utilizing the mathematical calculation so persuaded the jury to convict without regard to whether the jury was convinced of the guilt of the defendant to a moral certainty and beyond a reasonable doubt. The jurors were unduly impressed by the mystique of the mathematical demonstration but unable to assess its relevancy or value.
 {¶ 53} Unlike Collins, the alleged inference of statistical likelihood during closing argument by the prosecutor in the case at hand was so slight as to be immaterial. In Collins, the prosecution centered its entire case on the mathematical demonstration in an effort to prove the statistical likelihood of the defendant's guilt. Here, the prosecutor simply stated that the burden of the State is to prove guilt beyond a reasonable doubt, not to eliminate every conceivable possibility. It has been held that "the reasonableness of the theory of innocence is primary for the trier of fact." State v. Woods (1983), 13 Ohio App.3d 49.
 {¶ 54} In accordance, the prosecutor merely referenced that differing possibilities existed as to the cause of the victim's injuries. Nevertheless, the burden of proof was "beyond a reasonable doubt," and the reasonableness of the appellant's theory of innocence, however minimal, was primarily for the trier of fact. In every criminal case, the jury is asked to weigh all of the admissible evidence, both circumstantial and direct, to determine if the defendant is guilty beyond a reasonable doubt. State v. Jenks, supra, at 272. This tenet of the criminal law remains true, whether the evidence against the defendant is circumstantial or direct. Id. Therefore, we find no merit to the appellant's first assertion of prosecutorial misconduct.
 {¶ 55} The appellant next asserts that the prosecutor committed prejudicial error during closing arguments by asking the jury to "step into the shoes" of the victim and asking the jury if they would entrust their children to the appellant. With regard to this assertion, the appellant cites to page 609 of the transcript and the following colloquy of the prosecutor:
 {¶ 56} "I would suggest this to you though: when you go back to deliberate, would you ask yourself two questions. Number one, would you entrust your child to that defendant to watch, and number two, God forbid that you should have a young child that would be seriously ill or injured, but if you did, who would you want them treated and taken care of, * * *."
 {¶ 57} In reviewing the instant passage, we find no error in the remarks made by the prosecutor. The prosecutor does not invite the jury to "step into the shoes" of the victim, but, rather, asks the jury if they would entrust their children to the appellant's supervision. The appellant cites to State v. Hart (2002), 2002-Ohio-1084, in support of this argument. But unlike Hart, the prosecutor in the case at hand did not suggest that the jurors place themselves in the same position as the victim. In Hart, the prosecutor incited the jurors' emotions by graphically describing the attack upon the victim. This court determined that reversible error occurred because the prosecutor's act of inciting the jurors' emotions by asking them to "put themselves in the victim's shoes" and to imagine what could have been instead of relying solely on the facts at hand was improper. Id. at 7.
 {¶ 58} In the instant case, the statements of the prosecutor differ substantially from the graphic descriptions offered by the prosecutor during closing arguments in Hart, supra. At no point does the prosecutor rely on facts outside of the evidence, nor does the prosecutor attempt to incite the jurors' emotions by utilizing graphic descriptions of the trauma the victim incurred. At most, the statement with regard to trusting the appellant with your child was irrelevant and harmless at best. There is no evidence to indicate that, absent the remarks of the prosecutor, the jury verdict would have been different in light of the evidence presented at trial.
 {¶ 59} Last, the appellant contends that the prosecutor committed prejudicial error during closing arguments by inferring that the reason counsel for the appellant failed to question appellant's expert, Dr. Plunkett, as to the degree of medical certainty in which he held his opinion was because counsel for the appellant knew that Dr. Plunkett did not hold his opinion to a reasonable degree of medical certainty. The appellant asserts that these statements suggested a disingenuousness on defense counsel's behalf. The following colloquy forms the basis of the appellant's third assertion of prosecutorial misconduct during closing arguments:
 {¶ 60} "I asked toward the end of their [State's doctors] testimony, I asked the following question: Based on your education, training and experience, and within a reasonable degree of medical certainty, do you have an opinion, and/or a diagnosis with regard to this case. You never heard that question posed to Dr. Plunkett by Mr. Sondik. Why do you think that is? Because he couldn't give you an opinion based on a reasonable degree of medical certainty. * * * and that's why Mr. Sondik didn't ask that question. Folks, that's a standard question we ask experts and medical people all the time. In fact, you practically have to ask it if that's what you're purporting to bring out in testimony. * * *."
 {¶ 61} The appellant cites to United States v. Rodrigues (9th Cir. 1998), 159 F.3d 439, in support of his position that the prosecutor, during close, in some manner commented on counsel's disingenuousness to warrant reversible error. In Rodrigues, the prosecutor indicated that counsel for the defendant had attempted from the start to lie and deceive the jurors by making an incorrect statement of law. The defense objected to the prosecutor's statement outside the presence of the jury at the next recess; however, the court did not address the issue with the jury prior to the jury being sent home for the evening. On appeal, the Ninth Circuit reversed the defendant's conviction as being violative of federal due process. With regard to the statements of the prosecutor, the court stated:
 {¶ 62} "* * * As they [the jurors] went home for the night and thought about the case they would have to decide the next day was that the representative of the United States held defense counsel to be a liar who from the beginning of the case had set out to mislead them. * * * When he [the prosecutor] says that defendant's counsel is responsible for lying and deceiving, his accusations cannot fail to leave an imprint on the jurors' minds. And when no rebuke of such false accusations is made by the court, * * *, when no curative instruction is given, the jurors must necessarily think that the false accusations had a basis in fact. The trial process is distorted." Id. at 451.
 {¶ 63} Unlike Rodrigues, supra, at no point does the prosecutor in the case at hand infer that counsel for the appellant was not being truthful, or that counsel was attempting to deceive the jury in failing to ask Dr. Plunkett if his opinions were based on a reasonable degree of medical certainty. Moreover, we note that no objection to the prosecutor's comments were made during close, unlike the facts ofRodrigues, supra. The reference to appellant's trial counsel's failure to ask Dr. Plunkett if his opinions were based on a reasonable degree of medical certainty does not infer that counsel was less than forthright, but simply draws attention to the fact that the expert testimony offered by the State was based on a reasonable degree of medical certainty, unlike Dr. Plunkett's testimony; a distinction which undoubtedly was key to the State's case and to the jury in reaching their ultimate conclusion.
 {¶ 64} As such, we find no error in the statements of the prosecutor during closing arguments, as proffered by the appellant. Moreover, even if the comments of the prosecutor were improper, the appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced the appellant. State v. Smith (1984),14 Ohio St.3d 13. In the case at hand, we find that, even absent the alleged prejudicial comments, the jury still would have found the appellant guilty.
 {¶ 65} Accordingly, the appellant's fourth assignment of error is not well taken.
 {¶ 66} The appellant's fifth assignment of error states:
 {¶ 67} "V. The convictions are against the manifest weight of the evidence."
 {¶ 68} For the same reasons as discussed in the appellant's first and second assignments of error, the appellant asserts in his fifth assignment that the convictions are against the manifest weight of the evidence.
 {¶ 69} State v. Martin (1983), 20 Ohio App.3d 172, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 70} "There being sufficient evidence to support the conviction as a matter of law, we next consider the claim that the judgment was against the manifest weight of the evidence. Here, the test is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *. SeeTibbs v. Florida (1982), 457 U.S. 31, 38, 42." State v. Martin, supra, at 175.
 {¶ 71} Moreover, the weight of the evidence and credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. State v. Martin, supra.
 {¶ 72} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court in State v. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442/64443, adopted the guidelines set forth in State v. Mattison (1985), 23 Ohio App.3d 10, syllabus. These factors, which this court noted are in no way exhaustive, include:
1) Knowledge that even a reviewing court is not required to accept the incredible as true;
2) Whether evidence is uncontradicted;
3) Whether a witness was impeached;
4) Attention to what was not proved;
5) The certainty of the evidence;
6) The reliability of the evidence;
7) The extent to which a witness may have a personal interest to advance or defend their testimony; and
8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary.
 {¶ 73} A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proved the offense beyond a reasonable doubt. State v.Eley (1978), 56 Ohio St.2d 169. Moreover, it is important to note that the weight of the evidence and the credibility of the witnesses are issues primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230. Hence we must accord due deference to those determinations made by the trier of fact.
 {¶ 74} In applying the above standard, this court cannot conclude that the appellant's conviction is against the manifest weight of the evidence. At trial, as discussed, substantial medical testimony was elicited by the State outlining the nature and extent of the victim's injuries. Additionally, each of the State's medical experts testified that their opinions were held to a reasonable degree of medical certainty. Granted, the appellant offered the testimony of his own expert, Dr. Plunkett, who testified that the injuries sustained by the victim could have been caused in the manner described by the appellant in rare instances. Nevertheless, the credibility of the witnesses is primarily an issue for the trier of fact. In the instant matter, conflicting testimony was offered, and it was the province of the jury to make a determination as to the credibility of each witness.
 {¶ 75} Last, as previously determined, the statements of Detective Boresz and the appellant's assertion that the prosecutor committed prejudicial error during closing argument is without merit. Accordingly, this court will not reverse a verdict where the trier of fact could reasonably conclude from the substantial evidence that the State has proved the offense beyond a reasonable doubt. Therefore, the appellant's fifth assignment of error is without merit.
 {¶ 76} The appellant's sixth assignment of error states:
 {¶ 77} "VI. The convictions in counts one and two are allied offenses and must merge."
 {¶ 78} The appellant argues that felonious assault and child endangering are allied offenses of similar import and therefore must be merged. We find no merit to the appellant's sixth assignment of error.
 {¶ 79} Allied offenses of similar import are governed by R.C.2941.25, which provides:
 {¶ 80} "(A) Where the same conduct by the defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 81} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 82} In State v. Rance (1999), 85 Ohio St.3d 632, the Ohio Supreme Court recently reconsidered the issue of how to apply R.C.2941.25(A) when determining whether two or more offenses constitute allied offenses of similar import. The Court further reconsidered whether the elements test should be conducted in terms of the facts of the specific case or in terms of the statutory elements of the offenses in the abstract. The Court ruled that an analysis of the elements in the abstract was proper, overruling Newark v. Vazirani (1990),48 Ohio St.3d 81, and the language to the contrary in other cases. UnderRance, when determining whether two or more offenses are allied offenses of similar import, the court should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other. And if the elements do so correspond, the defendant may not be convicted of both unless the court finds that the defendant committed the crimes separately or with separate animus. R.C.2941.25(B)" Id. at 638-639.
 {¶ 83} The appellant relies on State v. Madison (June 22, 1993), Franklin App. No. 92AP-1461, in support of his position. In Madison, the Franklin County Court of Appeals held that the offenses of felonious assault and child endangering by torture or cruel abuse were allied offenses of a similar import. The Madison court's analysis of the offenses in the case was based upon the factual allegations made by the prosecution following the rule set forth in Vazirani, supra. However, as stated in accordance with Rance, supra, and the Supreme Court's disapproval of this fact-based analysis, we find the appellant's reliance on Madison to be unpersuasive.
 {¶ 84} Recently, courts which have undertaken an examination of the elements of the two offenses in the abstract, in accordance withRance, supra, have found that felonious assault under R.C. 2903.11(A)(1) and child endangering under R.C. 2919.22(B)(2) are not allied offenses of similar import. See State v. Ross (1999), 135 Ohio App.3d 262. In Ross, the Twelfth Appellate District stated that child endangering under R.C.2919.22(B)(2) requires proof of an element distinct from the elements of felonious assault under R.C. 2903.11(A)(1); therefore, the two offenses are not allied offenses of a similar import. Citing State v. Anderson
(1984), 16 Ohio App.3d 251, overruled on other grounds, State v.Campbell (1991), 74 Ohio App.3d 352.[4]
 {¶ 85} Therefore, in accordance with Ross, supra, we find that the offenses of felonious assault and child endangering are not allied offenses of similar import. The appellant was properly convicted of both offenses, pursuant to Rance, supra; therefore, the appellant's sixth assignment of error is without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, J., and COLLEEN CONWAY COONEY, J., concur.
[1] The appellant is the father of two children, the victim, and another daughter who was two-and-a-half years old at the time of the instant incident.
[2] An evolsion fracture is caused by a traumatic event, which causes the muscle or ligament to pull away from the connected bone.
[3] R.C. 2901.22 Culpable mental states:
"* * *
"(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
"(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
[4] In Anderson, supra, the defendant was convicted of felonious assault under R.C. 2903.11(A) and child endangering under a former version of R.C. 2919.22(B)(1), which at the time required proof that the defendant "tortured or cruelly abused a child under eighteen years of age." The court ruled that the offenses were not allied offenses of similar import, finding that the offense of child endangering has, under the definition set forth in R.C. 2919.22(B)(1), been marked by the legislature with certain attributes so unique that it must be construed as wholly separate and distinct from that of felonious assault. Specifically, the legislature chose to bestow special protection upon children by crafting an offense that, in essence, involves the infliction of torture or cruel physical abuse on those who have yet to attain the age of majority. Because the peculiar elements at the heart of the crime play no essential part in the definition of felonious assault, it is fair to say that any act of felonious assault will not perforce result in an act of child endangering. Id. See, also, State v. Parish (Oct. 31, 1995), Hancock App. No. 5-95-11.