OPINION
{¶ 1} Defendant-appellant, Kimberly Johns, appeals her convictions and sentence in the Clermont County Court of Common Pleas for two counts of felonious assault with firearm specifications. We affirm the decision of the trial court.
 {¶ 2} On December 31, 2002, appellant attended a New Year's Eve party with her boyfriend, Robert Herron ("Herron"), hosted by the Aeolus Motorcycle Club. At the party, appellant got into an argument with another female. The argument was broken up after Herron intervened and separated the two women.
 {¶ 3} For the rest of the party, Herron and appellant became involved in a dispute between each other. Appellant claimed that Herron had called her a derogatory name when he had separated appellant from the other female. Furthermore, appellant later told Claud M. Snow ("Snow"), another member of the Aeolus Motorcycle Club attending the party, that Herron had physically abused her during the course of the evening. However, Snow testified that he had not seen Herron physically harm appellant that night.
 {¶ 4} The New Year's party concluded at approximately 6:30 a.m. on January 1, 2003. Herron and appellant were still fighting when the party ended. Snow intervened in the dispute and took appellant back to his residence. Subsequently, appellant and Snow had a 45-minute conversation. During this conversation, appellant told Snow that she wanted to kill Herron for embarrassing her at the party. Appellant and Snow finished their conversation and then went into separate rooms to sleep for the rest of the day.
 {¶ 5} Around 4:30 p.m., appellant called her sister, Kelly Gilpin ("Gilpin"). Appellant told her sister about the fight with Herron, and asked to be picked up from Snow's residence. Appellant's sister agreed to drive over and indicated that her boyfriend, Randy Colwell ("Colwell"), would be accompanying her. As appellant waited for her sister, Snow received a call from Herron. Herron informed Snow that he was coming over to Snow's house, and that appellant's sister had just called him and threatened to "have him beaten."
 {¶ 6} At 5:00 p.m., Herron arrived. Snow invited Herron into the house. Consequently, Herron and appellant became involved in a heated argument. The couple's argument was interrupted by the sound of a loud automobile horn.
 {¶ 7} Gilpin and Colwell were waiting for appellant in Snow's driveway. However, appellant did not leave Snow's house. Rather, Herron walked out to the breezeway that connects the house to the garage. Upon entering the breezeway, Herron and Colwell became involved in a physical struggle. They fell onto the floor and exchanged punches as they wrestled on the floor of the enclosure.
 {¶ 8} As Herron and Colwell continued to fight, appellant retrieved a .44 caliber revolver from Snow's bedroom. While appellant was in the bedroom, Snow attempted to separate Herron and Colwell. After entering the breezeway, appellant aimed Snow's revolver at Herron. Appellant fired the gun from a distance of two to three feet. The bullet struck Herron's chest and transected his left axillary artery.
 {¶ 9} Immediately after Herron was shot, Snow approached appellant and removed the weapon from her hand Snow took the revolver and placed it in a kitchen cupboard inside his residence. Gilpin testified that appellant stated she shot Herron accidentally and that she fired the revolver because she wanted to scare him. However, while Snow talked on the phone to a 9-1-1 operator, appellant ran off down the driveway. Snow chased after appellant and prevented her from leaving.
 {¶ 10} After paramedics arrived, Herron was taken to University Hospital where emergency surgery was performed. Surgeons opened Herron's chest and massaged his heart in order to restart it. Doctors also had to harvest a vein from Herron's leg in order to repair the damaged artery. While recovering from the surgery, Herron developed pneumonia and became extremely ill. Due to the gunshot wound and surgery, Herron's left arm is practically useless and his thinking process has been impeded.
 {¶ 11} On January 29, 2003, the Clermont County Grand Jury returned an indictment against appellant. Appellant was charged with violating R.C. 2903.11(A)(1), felonious assault, a felony of the second degree, and R.C. 2903.11(A)(2), felonious assault with a deadly weapon, a felony of the second degree. Both charges carried gun specifications. A jury trial was held on April 30 and May 1, 2003. On May 2, 2003, appellant was found guilty on both counts of the indictment. A presentence investigation was ordered.
 {¶ 12} On June 9, 2003, appellant was sentenced to serve three years for the gun specification and four years for each underlying offense. The trial court ordered the sentences to be served consecutively to each other. Appellant appeals her convictions and sentence raising four assignments of error. The first and second assignments of error will be addressed together.
 Assignment of Error No. 1 {¶ 13} "The trial court erred to the prejudice of the defendant by failing to grant defendant's criminal rule 29 motion for acquittal."
 Assignment of Error No. 2 {¶ 14} "Appellant's conviction is contrary to law because the finding of guilty was against the manifest weight of the evidence."
 {¶ 15} Appellant argues that "the evidence presented at trial was insufficient for reasonable minds to conclude that the element of `knowingly' had been proven beyond a reasonable doubt." Appellant also argues that "the evidence presented at trial failed to attain the high degree of probative force and certainty required of a criminal conviction and the verdict of guilty was against the manifest weight of the evidence."
 {¶ 16} When reviewing a ruling on a Crim.R. 29(A) motion for acquittal, an appellate court construes the evidence in a light most favorable to the state. Crim.R. 29(A) states that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." However, if the record demonstrates that reasonable minds may reach differing conclusions as to the proof of material elements of a crime, a trial court may not grant a defendant's Crim.R. 29(A) motion for acquittal. State v. Wolfe
(1988), 51 Ohio App.3d 215, 216.
 {¶ 17} The relevant inquiry when addressing a sufficiency of evidence claim is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In essence, "sufficiency is a test of adequacy." State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52.
 {¶ 18} While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, "a manifest weight challenge questions whether the state has met its burden of persuasion." Id. at 390. When a defendant maintains that her conviction is against the manifest weight of the evidence.
 {¶ 19} "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
State v. Otten (1986), 33 Ohio App.3d 339, 340. An appellate court should only invoke this power in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id.
 {¶ 20} Appellant was convicted of felonious assault in violation of R.C. 2903.11(A)(1) and (A)(2). Those sections provide:
 {¶ 21} "(A) No person shall knowingly do either of the following:
 {¶ 22} "(1) Cause serious physical harm to another * * *.
 {¶ 23} "(2) Cause or attempt to cause serious physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 24} Appellant maintains that the state failed to prove she knowingly injured Herron. Knowledge is the culpable mental state of the accused. A person "acts knowingly, regardless of her purpose, when she is aware that her conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when she is aware that such circumstances probably exist." R.C. 2901.22(B). To determine whether appellant acted knowingly, her state of mind must be determined from the totality of the circumstances surrounding the crime. State v. Patterson (1982), 69 Ohio St.2d 445, 447.
 {¶ 25} The evidence at trial showed that appellant was at a New Year's Eve party with Herron. Appellant began fighting with another female at the party. When the fight ended, Snow removed appellant from the party. Snow took appellant to his residence. According to Snow, appellant stated that Herron "had embarrassed her at that party" and that "she was going to kill him." Appellant phoned her sister, Kelly Gilpin, from Snow's residence and asked her to "come and get her."
 {¶ 26} Gilpin then phoned Herron and threatened him. Herron arrived at Snow's residence to confront appellant. When Herron arrived, another argument ensued. At that point Gilpin arrived, pulled her automobile into Snow's driveway, and honked the horn. Snow heard something outside and walked out his back door. He found Randy Colwell, Gilpin's boyfriend, fighting with Herron in his yard. Snow was attempting to break up the fight when he heard a gunshot. Snow testified that when he looked in the direction the gunshot came from, he saw that appellant "had my pistol pointed at [Herron]." Snow testified that "it was pointed right at him."
 {¶ 27} Herron received a gunshot wound to the left side of his chest from a .44 magnum single-action Ruger Vacquero revolver. William Schrand of the Hamilton County Coroner's Office testified that a single-action revolver requires cocking the hammer "with your thumb or in another manner, * * * in preparation of firing" before pulling the trigger will fire the handgun. Schrand also testified that the [gun powder residue] pattern on Herron's clothing "was consistent with a gunshot greater than two but less than three feet distance."
 {¶ 28} Given the evidence at trial, we cannot say that the jury clearly lost its way and committed a miscarriage of justice. The state offered evidence that appellant threatened to kill Herron. Appellant obtained Snow's .44 magnum revolver, cocked the hammer, came within three feet of Herron, and then, according to Snow, "pointed [the revolver] right at him." Herron was struck in the chest by a .44 magnum projectile causing serious physical harm. The state also offered evidence, buffered by common sense, illustrating that anyone should know that firing a revolver pointed right at someone, within a three-foot proximity, will probably cause serious physical harm. Consequently, we find the conviction is supported by the weight of the evidence.
 {¶ 29} Furthermore, a finding that a conviction is supported by the weight of the evidence includes a finding of sufficiency of the evidence. State v. Davis, Summit App. No. 21794, 2004-Ohio-3246, at ¶ 57. Accordingly, we overrule appellant's first and second assignments of error.
 Assignment of Error No. 3 {¶ 30} "The trial court committed plain error when it failed to instruct the jury as to the elements of accident and that proof of accident negates guilt."
 {¶ 31} Appellant argues that "where accident has been raised as a defense and supported by the evidence, a trial court errs in failing to instruct the jury on that issue."
 {¶ 32} However, accident is not an affirmative defense.Jones v. State (1894), 51 Ohio St. 331, 342. Rather, the defense of accident is tantamount to a denial that an unlawful act was committed; it is not a justification for the defendant's admitted conduct. State v. Poole (1973), 33 Ohio St.2d 18. An accident is an event that occurs unintentionally and without any design or purpose to bring it about. State v. Fears,86 Ohio St.3d 329, 340, 1999-Ohio-111. In order for an accident to occur, "it must have been a physical event which would not be reasonably anticipated as a result of a lawful act." State v. Ross (1999),135 Ohio App.3d 262, 276. A party is entitled to an accident instruction when there is evidence presented at trial that the party's action was an accident. State v. Thomas (1988),40 Ohio St.3d 213, 218.
 {¶ 33} In the present case, appellant fired the handgun ostensibly to "scare Herron." Therefore, appellant acted intentionally and with a design or purpose. She obtained Snow's .44 magnum revolver, cocked the hammer, came within three feet of Herron, "pointed [the revolver] right at him," and discharged the firearm. As there was no question in this case that appellant committed an unlawful act, namely, discharging a handgun in public in an effort to "scare Herron," an instruction on accident was not appropriate. This court therefore concludes that the trial court did not abuse its discretion when it refused to instruct the jury on accident. Appellant's third assignment of error is overruled.
 Assignment of Error No. 4 {¶ 34} "The trial court erred when it failed to sentence the appellant to the shortest prison term and such sentence is contrary to law."
 {¶ 35} Appellant argues that "the sentencing court's finding that the minimum sentence would demean the seriousness of appellant's conduct was not supported by the record and contrary to law."
 {¶ 36} An appellate court may not disturb a sentence imposed by a trial court unless it finds by clear and convincing evidence that the sentence is not supported by the record or is contrary to law or statute. R.C. 2953.08(G)(1); State v. Quinn (1999),134 Ohio App.3d 459, 462. Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State v. Garcia (1998), 126 Ohio App.3d 485, 487.
 {¶ 37} R.C. 2929.14 states, "(B) * * * if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless one or more of the following applies:
 {¶ 38} "* * *
 {¶ 39} "(2) The court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 40} In the present case, appellant had a fight with Herron and stated that "she was going to kill him." Later that day, appellant obtained a .44 magnum revolver, cocked the hammer, came within three feet of Herron, "pointed [the revolver] right at him," and discharged the firearm.
 {¶ 41} The trial court noted in the judgment entry of sentence that "this court finds pursuant to R.C. 2929.14(B) that the shortest prison term possible will demean the seriousness of the offense and will not adequately protect the public and therefore imposes a greater term." Furthermore, the trial court stated at the sentencing hearing that "as far as the nature of this offense, there is a great deal of serious physical harm which was occasioned to the victim. In this case, the medical bills and expenses exceed $200,000 — actually $216,942.23. As far as the seriousness goes on a felonious assault, there is not much more serious that can occur on a felonious assault. Obviously, if it were more serious it would then be elevated to a homicide as opposed to a felonious assault. So certainly, this is the most serious type of felonious assault that could be conducted."
 {¶ 42} R.C. 2929.12(B) sets forth specific factors to assist courts in determining whether the conduct of a particular offender is more serious than conduct normally constituting the offense. R.C. 2929.12(B)(2) states, "the victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense." The court noted that in addition to his gunshot wound, Herron suffered economic harm as a result of $216,942.23 in medical bills and expenses.
 {¶ 43} Clearly, the trial court's findings comply with the requirements of R.C. 2929.14(B). And despite appellant's protests to the contrary, we cannot clearly and convincingly find that the trial court's findings are not supported by the record. Consequently, the fourth assignment of error is overruled.
Judgment affirmed.
Young, P.J., and Valen, J., concur.