OPINION
{¶ 1} Defendant-appellant, Bradley Chewning, appeals his convictions in the Clermont County Court of Common Pleas, the imposition of consecutive sentences, and his classification as a sexual predator. Appellant was convicted of three counts of rape, and one count each of attempted rape, complicity to commit rape, gross sexual imposition, disseminating material harmful to a minor, and contributing to the unruliness of a minor.
 {¶ 2} In 2003 appellant lived in Goshen Township with his parents, his girlfriend, Toni Armas, and her two children. C.P., 12 years old, lived with her parents in the same neighborhood. C.P. had been friends with Armas for some time, and in April 2003, their friendship grew as C.P. was experiencing some conflict at home. Early that month, Armas introduced appellant and C.P. Armas told C.P. that appellant "liked her enough to have sex." One evening between April 4 and 6, 2003, the three went bowling together and C.P. spent the night at appellant's home. Armas and appellant showed C.P. a pornographic video purportedly to provide some sexual education. After the tape was viewed for a time appellant kissed C.P. on the cheek.
 {¶ 3} On April 9, 2003, appellant and Armas left for Texas. Before leaving he kissed C.P. on the lips. While in Texas, he phoned C.P. almost daily. Appellant and Armas returned from Texas on May 2, 2003. Appellant's relationship with C.P. deepened, and involved holding hands and kissing. Later that month, appellant and C.P. played a game of "horse" with the understanding that C.P. would have sex with appellant if she lost the game. C.P. lost twice. On May 16 or 17, 2003, C.P. stayed overnight at appellant's home. After Armas fell asleep, appellant digitally penetrated C.P.'s vagina and fondled her breasts. C.P. pushed him away, but appellant later pulled down her shorts and underwear and performed oral sex on C.P.
 {¶ 4} On May 23, 2003, C.P. was at appellant's home to celebrate his birthday. Appellant repeatedly exposed his genitals to her and at one point forced his penis into her mouth.
 {¶ 5} On May 30, 2003, appellant, Armas, and C.P. went to a hotel together, "to get it over with," meaning that C.P. would have sex with appellant. On the way, they stopped at a convenience store and purchased condoms and snacks. C.P. was told to hide in appellant's car while appellant checked into the hotel. Appellant and C.P. entered the room together while Armas remained outside. C.P. showered and redressed, and joined appellant on the bed. Appellant began kissing her. C.P. told him that she did not want to have sex and the encounter ended a short time later.
 {¶ 6} In June 2003, C.P.'s mother heard rumors about C.P.'s relationship with appellant. C.P. at first denied the allegation that she and appellant had been sexually involved, but later related the above-described events to her mother. C.P.'s mother contacted children services and local police. A search warrant was executed at appellant's residence and pornographic videotapes were recovered. Upon examination, one of the videotapes was discovered to depict scenes described by C.P. She also retraced the route that she, appellant, and Armas took on the way to the hotel, and police discovered documentary evidence confirming the sequence of events.
 {¶ 7} On July 30, 2003, appellant was indicted on three counts of rape in violation of R.C. 2907.05(A)(4), gross sexual imposition in violation of R.C. 2907.05(A)(4), and disseminating matter harmful to juveniles in violation of R.C. 2907.31(A)(1). On October 29, 2003, appellant was indicted on the following additional charges: attempted rape in violation of R.C.2923.02(A), contributing to the unruliness of a child in violation of R.C. 2919.-24(A)(1), and complicity to commit rape in violation of R.C. 2923.-03(A)(3). The matter proceeded to a jury trial. The jury found appellant guilty on all eight counts and appellant was sentenced to an aggregate term of twelve years incarceration.[1] Appellant was classified a sexual predator. He appeals, raising six assignments of error.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "The trial court erred in excluding the defendant-appellant during the exercise of peremptory challenges, in violation of his rights to confrontation and due process."
 {¶ 10} Following voir dire, the trial judge, prosecuting attorney, and defense counsel went into the judge's chambers, while appellant remained in the courtroom. The judge and attorneys returned to the courtroom a short while later, and the judge stated "[t]he court has in chambers with counsel had counsel exercise peremptory challenges." Appellant's counsel did not state an objection on the record to this proceeding. In his first assignment of error, appellant argues that he was denied his right to be present at a critical stage of the trial (the impaneling of the jury) as required by Crim.R. 43(A).
 {¶ 11} This rule provides:
 {¶ 12} "The defendant shall be present at the arraignment and every stage of the trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules. In all prosecutions, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the verdict."
 {¶ 13} A defendant's absence, however, does not necessarily result in prejudicial or constitutional error. "[T]he presence of the defendant [in a prosecution for felony] is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." Snyder v.Massachusetts (1934), 291 U.S. 97, 107-108, 54 S.Ct. 330;United States v. Gagnon (1985), 470 U.S. 522, 105 S.Ct. 1482. The defendant's absence in violation of the rule, although improper, can constitute harmless error where he suffers no prejudice. State v. Williams (1983), 6 Ohio St.3d, 281,285-287.
 {¶ 14} Appellant argues that we should review this assignment of error under a "structural error analysis." Structural errors are a limited class of constitutional defects, "that defy harmless-error analysis and are cause for automatic reversal" without a showing that a substantial right has been affected.State v. Perry, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 16. Structural error analysis is reserved for "constitutional deprivations * * * affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante (1991), 499 U.S. 279, 310,111 S.Ct. 1246 (citation omitted), quoted with approval in State v.Fisher, 99 Ohio St.3d 127, 2003-Ohio-2761, at ¶ 9. Among the limited number of errors that the Ohio Supreme Court recognizes as structural are the complete denial of counsel, a biased trial court, racial discrimination in the selection of a grand jury, the denial of self-representation at trial, the denial of a public trial, and conviction upon a defective reasonable-doubt instruction. See Perry, at ¶ 18-21.
 {¶ 15} In the present case, the failure to comply strictly with Crim.R. 43(A) is not a structural error. See, e.g., Statev. Vinzant, Montgomery App. No. 18546, 2001-Ohio-7005. Statutory or rule violations, even serious ones, will not sustain a structural-error analysis. See, e.g., Perry, syllabus (trial court's failure to maintain written jury instructions with "papers of the case" as part of the record for use on appeal, in violation of R.C. 2945.10[G]); State v. Esparza,74 Ohio St.3d 660, 1996-Ohio-233 (trial court's violation of Crim.R. 16[B][1][e] on motion for relief from discovery).
 {¶ 16} Moreover, appellant's absence from the exercise of the peremptory challenges does not constitute the type of error that structural error guards against: the error does not "permeate `[t]he entire conduct of the trial from beginning to end' so that the criminal trial cannot `reliably serve its function as a vehicle for determination of guilt or innocence.'" Perry at ¶ 25 (citations omitted).
 {¶ 17} Consequently, because the alleged error was not objected to at trial, we will conduct a "plain error" review. See Crim.R. 52(B) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"). Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978),53 Ohio St.2d 91, 97. Notice of plain error pursuant to Crim.R. 52(B) must be taken only with the utmost caution, only under exceptional circumstances and only to prevent a manifest miscarriage of justice. Id. at 94-95.
 {¶ 18} In the present case, appellant's absence when peremptory challenges were made did not thwart a fair and just hearing. See Snyder, 291 U.S. 97, 54 S.Ct. 330. Appellant conferred with his counsel before the proceeding moved into the judge's chambers, and appellant is unable to demonstrate any prejudice resulting from his absence when peremptory challenges were made. Consequently, his absence, with counsel's consent, was harmless error. Accord Vinzant, State v. Williams,6 Ohio St.3d at 287; State v. Roe (1989), 41 Ohio St.3d 18, 27. The assignment of error is overruled.
 {¶ 19} Assignment of Error No. 2:
 {¶ 20} "Appellant was denied the effective assistance of counsel when trial counsel failed to object to appellant's absence at a critical stage of his trial, failed to exercise peremptory challenges to excuse certain jurors, failed to ask the victim about prior false accusations, failed to request the victim's statements under Crim.R. 16, and failed to properly prepare appellant's defense."
 {¶ 21} To establish a claim of ineffective assistance of counsel, appellant must show that his trial attorney's performance was deficient and prejudicial. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052. To establish deficient performance, appellant must show that under the totality of the circumstances, counsel's representation fell below an objective standard of reasonableness. Id. at 688. A court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 689. To establish prejudice, appellant must show that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id. at 694. A strong presumption exists that a licensed attorney is competent and that the challenged action falls within the wide range of professional assistance. State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland, at 689. Upon review of the record, we find no merit to appellant's assertions that he received ineffective assistance of counsel.
 {¶ 22} Appellant first contends that his trial counsel was ineffective for failing to object to his absence when peremptory jury challenges were made. In our resolution of appellant's first assignment of error, we found that appellant's absence during this portion of the proceedings constituted harmless error. Consequently, he cannot demonstrate that he suffered any prejudice from his counsel's failure to object his absence.
 {¶ 23} Second, appellant contends that his trial counsel was ineffective for failing to make peremptory challenges. This contention is unsupported by the record. This court has not been provided with a record of the peremptory challenges which were exercised in chambers. Consequently, this court is unable to review appellant's contention that his trial counsel failed to make peremptory challenges. Since the record does not affirmatively support appellant's contention, this court must presume regularity. See State v. Hill, Fairfield App. No. 98CA67, 2002-Ohio-227, citing Knapp v. Edwards Laboratories
(1980), 61 Ohio St.2d 197; see, also, State v. Lewis (Apr. 28, 1994), Franklin App. No. 93AP-911.
 {¶ 24} Appellant argues thirdly that his trial counsel was ineffective for not questioning the victim about prior false or recanted allegations of rape. Review of the record reveals that appellant's attorney had no knowledge of such allegations. At a sidebar conference, counsel indicated to the trial judge that C.P. had confided in appellant that she had been raped before. However, counsel stated: "I don't know whether it was falsely [sic] or not." It is evident that counsel had no knowledge that C.P. had made and recanted allegations of rape in the past. Consequently, he was not ineffective for not pursuing this line of questioning.
 {¶ 25} Fourth, appellant argues that trial counsel was ineffective because counsel, following C.P.'s direct examination, did not ask to review C.P.'s written and recorded statements for inconsistencies as permitted by Crim.R. 16(B)(1)(g). Appellant concedes that any such statements were not preserved for appellate review, and that he has consequently waived this issue. We agree that, absent this evidence, we are compelled to presume the regularity of the proceeding and the competency of counsel's trial strategy. See Hill.
 {¶ 26} Finally, appellant argues that his trial counsel was ineffective because counsel did not effectively present his alibi defense. Specifically, appellant argues that his counsel should have subpoenaed records from his employer which would have placed appellant in Texas through May 16, 2003. Likewise, he argues that trial counsel should have subpoenaed cash register receipts and store surveillance tapes to establish his alibi for May 30, 2003.
 {¶ 27} Failure to subpoena evidence does not amount to a substantial violation of an essential duty to a client absent a showing that the evidence would have assisted the defense. SeeMiddletown v. Allen (1989), 63 Ohio App.3d 443, 448. InAllen, this court found ineffective assistance of counsel where the defendant was able to point to evidence that a witness clearly would have provided alibi testimony if he had been subpoenaed. Here, there is no indication that the evidence appellant asserts his trial counsel should have subpoenaed would actually have supported his alibi. There is also no indication that trial counsel's failure to subpoena the evidence was the result of incompetence or negligence as opposed to sound trial strategy. Appellant has not shown that his trial counsel's representation fell below an objective standard of reasonableness. Accordingly, appellant's second assignment of error is overruled.
 {¶ 28} Assignment of Error No. 3:
 {¶ 29} "The judgments of conviction are contrary to law and to the due process clause of the Fourteenth Amendment to the U.S. Constitution, in that there was insufficient evidence adduced to establish each and every element of the offenses beyond a reasonable doubt."
 {¶ 30} Assignment of Error No. 4:
 {¶ 31} "The judgments of conviction are contrary to the manifest weight of the evidence."
 {¶ 32} Because appellant has combined his argument related to the sufficiency and manifest weight of the evidence, we will likewise consider the assignments of error together.
 {¶ 33} The relevant inquiry when addressing a sufficiency of evidence claim is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. In essence, "sufficiency is a test of adequacy." State v. Thompkins, 78 Ohio St.3d 380,386,1997-Ohio-52.
 {¶ 34} While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, "a manifest weight challenge questions whether the state has met its burden of persuasion." Id. at 390. When a defendant maintains that his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340. An appellate court should only invoke this power in extraordinary circumstances where the evidence presented at trial weighs heavily in favor of a defendant. Id.
 {¶ 35} "[A] finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Hinojosa, Butler App. NO. CA2003-05-104, 2004-Ohio-1192, ¶ 12, quoting State v.Roberts (Sept. 17, 1997), Lorain App. No. 96CA006462.
 {¶ 36} Appellant first contends that his convictions for attempted rape are not supported by sufficient evidence and are contrary to the manifest weight of the evidence. Specifically, appellant argues that C.P.'s testimony was not credible, and alleges that her testimony was in part, coached.
 {¶ 37} Attempted rape requires that the actor (1) intend to compel submission to sexual conduct by force or threat, and (2) commit some act that "`convincingly demonstrate[s]'" such intent. See State v. Heinish (1990), 50 Ohio St.3d 231, 238-239, quoting State v. Woods (1976), 48 Ohio St.2d 127, 132. C.P. provided testimony, noted earlier, as to the elements required to prove each count of attempted rape. Appellant provided evidence of an alibi with regard to several of the counts.
 {¶ 38} Although a reviewing court looks at the record anew when considering whether a verdict at trial is against the manifest weight of evidence, the trier of fact, not the appellate court, is in the best position to evaluate testimony and determine the credibility of witnesses. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." State v.Guzzo, Butler App. No. CA2003-09-232, 2004-Ohio-4979, ¶ 13, quoting State v. Zentner, Wayne App. No. 02CA0040, 2003-Ohio-2352, ¶ 21.
 {¶ 39} This court has thoroughly reviewed the record, and with regard to the counts charging attempted rape, we cannot say that the jury clearly lost its way and committed a miscarriage of justice. Consequently, we find the convictions are supported by the weight of the evidence. This conclusion encompasses a finding that sufficient evidence was presented to support each element of the offense. See Hinojosa; see, also, State v. Johns,
Clermont App. No. CA2003-07-055, 2004-Ohio-3671, ¶ 29.
 {¶ 40} Appellant next contends that his conviction for contributing to the unruliness of a minor is unsupported by the evidence. He argues that the state failed to present evidence, beyond a reasonable doubt, that C.P. was "unruly."
 {¶ 41} An unruly child is defined, in part, as "[a]ny child who behaves in a manner as to injure or endanger his or her health or morals[.]" R.C. 2151.022(C). As a matter of law, a child is unruly who engages in sexual activity with an adult, "as it is inherently injurious to the morals of the child or others."State v. Lukens (1990), 66 Ohio App.3d 794, 808. The state provided evidence of sexual activity between C.P. and appellant, an adult. This evidence demonstrates, as a matter of law, that C.P. was an unruly child. Consequently, we find that appellant's conviction for contributing to the unruliness of a minor is supported by the manifest weight of the evidence, and likewise by sufficient evidence.
 {¶ 42} Lastly, appellant submits his conviction on a charge of conspiracy to commit rape is contrary to law as such is not a crime defined by the Ohio Revised Code. The state concedes that R.C. 2923.01, which criminalizes conspiracy, does not contemplate the offense of "conspiracy to commit rape." We agree with the state and appellant that, because the indictment charging appellant with violating R.C. 2923.01 fails to state an offense under the laws of Ohio, appellant's conviction on this count must be vacated.
 {¶ 43} Appellant's third and fourth assignments of error are sustained with regard to his conviction for conspiracy to commit rape, as charged in the October 29, 2003 indictment, and his conviction and sentence on this count is vacated. The third and fourth assignments of error are overruled in all other respects.
 {¶ 44} Assignment of Error No. 5:
 {¶ 45} "The trial court erred when it imposed consecutive sentences without following the sentencing guidelines."
 {¶ 46} Pursuant to R.C. 2929.14(E)(4), a court may impose consecutive terms of imprisonment if it makes three findings. First, the trial court must find that consecutive sentences are "necessary to protect the public from future crime or to punish the offender." R.C. 2929.14(E)(4). Second, the court must find that the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public. Id. Finally, the court must also find that one of the additional factors in R.C.2929.14(E)(4)(a)-(c) applies:
 {¶ 47} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to * * * [R.C.] 2929.16, [R.C.] 2929.17, or [R.C.] 2929.18 * * *, or was under post-release control for a prior offense.
 {¶ 48} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses * * * was so great or unusual that no single prison term for any of the offenses * * * adequately reflects the seriousness of the offender's conduct.
 {¶ 49} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 50} When imposing consecutive sentences, the trial court must make the statutorily enumerated findings and give reasons supporting those findings at the sentencing hearing. State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, paragraph one of the syllabus. R.C. 2929.14(E)(4) does not require the trial court to recite the exact words of the statute to impose consecutive sentences upon an offender. State v. Kelly (2001),145 Ohio App.3d 277, 281. However, the trial court must state sufficient supporting reasons for the imposition of consecutive sentences. R.C. 2929.19(B)(2)(c); State v. Boshko (2000),139 Ohio App.3d 827, 838-39.
 {¶ 51} While appellant argues that the trial court failed to make the required findings, review of the record reveals otherwise. At the sentencing hearing, the trial court made findings that "consecutive sentences I believe are required in this case to protect the community from future crimes of this individual," and that "consecutive sentences are not disproportionate to the seriousness of his conduct and the danger he does pose to the public." Finally, the trial court found that "[t]wo or more of these offenses were committed as a course of conduct which caused harm such that no single term of incarceration will in the Court's view adequately reflect the seriousness of the conduct." Because the trial court made the findings required to impose consecutive sentences we overrule the assignment of error.
 {¶ 52} Assignment of Error No. 6:
 {¶ 53} "The trial court erred when it classified appellant as a sexual predator."
 {¶ 54} In his final assignment of error, appellant argues that the trial court's decision classifying him a sexual predator was made in error, as the record does not contain evidence indicating that he is likely to commit another sexually oriented offense.
 {¶ 55} A sexual predator classification must be supported by clear and convincing evidence. R.C. 2950.09(B)(3). Clear and convincing evidence is evidence that "will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." State v. Eppinger,91 Ohio St.3d 158, 164, 2001-Ohio-247, citing Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. While clear and convincing evidence is "more than a mere preponderance" of the evidence, it is less than that which constitutes evidence "beyond a reasonable doubt." Id. at 164, citing Cross at 477.
 {¶ 56} A sexual predator is statutorily defined as a person "who has been convicted of or pleaded guilty to committing a sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses." R.C. 2950.01(E). Appellant was convicted of multiple sexually-oriented offenses. Thus the issue before the trial court when making the sexual predator determination was whether appellant was likely to commit another sexuallyoriented offense in the future.
 {¶ 57} R.C. 2950.09(B)(2)(a) through (j) list the factors a trial court must consider in determining whether a person is a sexual predator. The trial court is not required to find that the evidence presented supports a majority of the factors before making the sexual predator classification. State v. Boshko
(2000), 139 Ohio App.3d 827, 840. Rather, the trial court has discretion to rely upon one factor more than another, depending upon the circumstances of the case. Id.
 {¶ 58} In the present case, the trial court considered the evidence that weighed in favor of finding some of the statutory factors listed in R.C. 2950.09(B). Appellant has a prior juvenile and adult criminal record consisting of drug and theft offenses. Appellant was 23 years old when he engaged in a pattern of sexual conduct with the 12-year-old victim. Appellant befriended the victim and used this friendship to facilitate the commission of the offenses. Appellant, after his conviction for the offenses, failed to accept responsibility for the offenses or even acknowledge that they occurred. Having reviewed the record, we conclude that there is clear and convincing evidence to support the trial court's determination that appellant is a sexual predator. The sixth assignment of error is overruled.
 {¶ 59} Judgment affirmed in part, and appellant's conviction and sentence for complicity to commit rape as charged in the October 29, 2003 indictment, is vacated.
Young, P.J., and Powell, J., concur.
[1] Appellant was sentenced to nine years imprisonment on each count of rape; three years for gross sexual imposition; one year for disseminating material harmful to juveniles; three years for attempted rape; six months (in the county jail) for contributing to the unruliness of a child; and nine years for complicity to commit rape. All of the sentences were ordered to be served concurrently, except for the three-year sentence for attempted rape, which was ordered to be served consecutive to the aggregate nine year sentence imposed on the other counts.