OPINION
{¶ 1} Defendant-appellant, Toni Armas, appeals her convictions in the Clermont County Court of Common Pleas, for three counts of rape; gross sexual imposition; disseminating matter harmful to juveniles; attempted rape; contributing to the unruliness of a minor; and, complicity to commit rape.
 {¶ 2} Appellant, 19 years old, lived in Goshen Township with her two children, and her boyfriend, Bradley Chewning, 23 years old, and his parents. C.P., 12 years old, lived with her parents in the same neighborhood. C.P. had been friends with appellant for some time, and in April 2003, their friendship grew as C.P. was experiencing some conflict at home. In early April, appellant introduced C.P. to Chewning. Appellant told C.P. that Chewning "liked her enough to have sex." One evening between April 4 and 6, 2003, the three went bowling together and C.P. spent the night at appellant's home. Chewning and appellant showed C.P. a pornographic video purportedly to provide sexual education. After viewing the tape for some time, appellant asked C.P. to allow Chewning to kiss her, which he did.
 {¶ 3} On April 9, 2003, appellant and Chewning left for Texas. Before leaving, Chewning kissed C.P. on the lips. While in Texas, appellant and Chewning phoned C.P. almost daily. During one conversation, appellant asked C.P. if she wanted to "hook up with [Chewning]." Chewning and appellant returned from Texas on May 2, 2003. Chewning's relationship with C.P. became more physical, and involved holding hands and kissing. Later that month, appellant, Chewning and C.P. played a game of "horse" with the understanding that C.P. would have sex with Chewning if she lost the game. C.P. lost twice. After the game, in appellant's presence, Chewning admonished C.P. that appellant would videotape the sexual encounter if C.P. did not stop biting her nails. On May 16 or 17, 2003, C.P. stayed overnight at appellant's home. After appellant fell asleep, Chewning digitally penetrated C.P.'s vagina and fondled her breasts. C.P. pushed him away, but Chewning later pulled down her shorts and underwear and performed oral sex on C.P. Appellant was present in the home while these events occurred.
 {¶ 4} On May 23, 2003, C.P. was at appellant's home to celebrate Chewning's birthday. While appellant talked on the phone in the living room, Chewning, in the same room, repeatedly exposed his genitals to C.P. and at one point forced his penis into her mouth.
 {¶ 5} On May 30, 2003, appellant, Chewning, and C.P. went to a hotel together, "to get it over with," meaning that C.P. would have sex with Chewning. On the way, they stopped at a convenience store and purchased condoms and snacks. C.P. was told to hide in the car while Chewning checked into the hotel. Chewning and C.P. entered the room together while appellant remained outside. Upon entering the room, C.P. showered and redressed, and then joined Chewning on the bed. He began kissing her. Appellant went to the hotel room door three times, telling C.P. to hurry up. C.P. eventually told Chewning that she did not want to have sex and the encounter ended a short time later.
 {¶ 6} In June 2003, C.P.'s mother heard rumors about the relationship. C.P. at first denied the allegation that she and Chewning had been sexually involved, but later related the abovedescribed events to her mother. C.P.'s mother contacted children services and local police. A search warrant was executed at appellant's residence and pornographic videotapes were recovered. Upon examination, one of the videotapes was discovered to depict scenes described by C.P. She also retraced the route that she, appellant, and Chewning took on the way to the hotel, and police discovered documentary evidence confirming the sequence of events.
 {¶ 7} On July 30, 2003, appellant and Chewning were indicted on three counts of rape in violation of R.C. 2907.05(A)(4), gross sexual imposition in violation of R.C. 2907.05(A)(4), and disseminating matter harmful to juveniles in violation of R.C.2907.31(A)(1). On October 29, 2003, appellant and Chewning were indicted on the following additional charges: attempted rape in violation of R.C. 2923.02(A), contributing to the unruliness of a child in violation of R.C. 2919.24(A)(1), and complicity to commit rape in violation of R.C. 2923.03(A)(3). The matter proceeded to a jury trial with appellant and Chewning as co-defendants represented by the same attorney. The jury found appellant guilty on all eight counts. She has appealed, raising two assignments of error. Appellant has additionally filed two supplemental briefs each raising another assignment of error.
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "The trial court erred to the prejudice of defendant-appellant in failing to order that she receive the benefit of a separate trial and separate counsel to defend her."
 {¶ 10} In this assignment of error, appellant first alleges that she was "unfairly prejudiced by having the same lawyer representing both her and Bradley Chewning." Although she raised no objection to the joint representation at trial, appellant contends that the trial court should have appointed separate counsel to represent her.[1]
 {¶ 11} "In order to establish a violation of [the]Sixth Amendment right to effective assistance of counsel, a defendant who raised no objection to joint representation at trial must demonstrate that an actual conflict of interest adversely affected [her] lawyer's performance." State v. Manross (1988),40 Ohio St.3d 180, 182, certiorari denied (1989), 490 U.S. 1083,109 S.Ct. 2106; State v. Hannah (June 1, 1992), Fayette App. No. CA91-11-022. The mere possibility of a conflict of interest is "insufficient to impugn a criminal conviction." Manross at 182; see Hannah. Moreover, there is no conflict of interest where the defenses presented do not consist of one party assigning blame to another and where defendants have a common interest in attacking the credibility of the prosecution's witnesses. Manross at 183.
 {¶ 12} A review of the record in the present case reveals no evidence of an actual conflict of interest. Appellant's and Chewning's defenses did not result in one assigning blame to the other; rather, their common defense attacked the credibility of C.P., the prosecution's witness. In this instance, appellant has failed to demonstrate an actual conflict arising from the joint representation. See Manross at 182; State v. Ballinger (Nov. 6, 1995), Butler App. Nos. CA95-02-021 and CA95-02-030.
 {¶ 13} Appellant also alleges that she was denied the effective assistance of counsel, because her trial counsel's performance was deficient. To establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that trial counsel's performance was deficient, namely, that counsel's representation fell below the objective standard of reasonable competence under the circumstances. Second, the defendant must show that, as a result of this deficiency, she was prejudiced at trial. Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052. A strong presumption exists that a licensed attorney is competent and that challenged actions fall within "the wide range of reasonable professional assistance." State v. Bradley (1989), 42 Ohio St.3d 136, 142, quoting Strickland at 689. Upon review of the record, we find no merit to appellant's assertions that she received ineffective assistance of counsel.
 {¶ 14} In her appellate brief, appellant first argues that trial counsel was ineffective for failing to exercise peremptory challenges to excuse jurors. At oral argument appellant's counsel conceded that the record demonstrates that trial counsel in fact exercised peremptory challenges. We consequently find this argument to be without merit.
 {¶ 15} Appellant also argues that counsel was ineffective for failing to challenge certain jurors who had been victims of sexually-oriented offenses, or who were close to someone who had been the victim of such an offense. However, counsel is not ineffective for failing to challenge prospective jurors, where, as in the present case, review of the record demonstrates that each of the jurors informed the trial court that each could be fair and impartial. Lakewood v. Town (1995), 106 Ohio App.3d 521,526.
 {¶ 16} Appellant next argues that her trial counsel was ineffective for failing to request a change of venue or in the alternative, for failing to object to the course-of-conduct instruction given to the jury, with regard to the charge of contributing to the unruliness of a minor. This charge arose out of the events which occurred on May 20, 2003. Appellant argues that the request for a change of venue should have been made because the events occurred primarily at the Tri-County Inn, located in Butler County. Contrary to appellant's assertion, the record supports the course-ofconduct instruction, and reveals that Clermont County provided a proper venue.
 {¶ 17} R.C. 2901.12(A) provides that "a criminal case * * * shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed." Express evidence is not necessary to establish venue; it may be proven by the facts and circumstances of the case. State v. Headley (1983),6 Ohio St.3d 475, 477. Under R.C. 2901.12(H)(1), when a course of criminal conduct occurs involving the same victim, venue is established in any jurisdiction where an element of the offense took place. See, also, State v. Beuke (1988), 38 Ohio St.3d 29. The events giving rise to the charge of contributing to the unruliness of a minor began in Clermont County when C.P. misinformed her mother that she would be going to a movie with appellant and Chewning. Instead, appellant and Chewning drove C.P. to a convenience store in Clermont County where they purchased condoms before proceeding to the Tri-County Inn. After the encounter at the hotel they returned to Clermont County. In this instance, challenges to venue and the course-of-conduct instruction were not warranted, and appellant's counsel was not ineffective for failing to raise the issues. Id.; State v. Linton (Sept. 16, 1999), Licking App. No. 99 CA 10.
 {¶ 18} Lastly, appellant argues that her trial counsel was ineffective because counsel, following C.P.'s direct examination, did not ask to review C.P.'s written and recorded statements for inconsistencies as permitted by Crim.R. 16(B)(1)(g). This court has not been provided with a record of any such statements and consequently, is unable to review appellant's contention that these records would have provided exculpatory evidence. Since the record does not affirmatively support appellant's contention, this court must presume the regularity of the proceeding and the competency of counsel's trial strategy. See State v. Chewning, Clermont App. Nos. CA2004-01-002, CA2004-01-003, 2004-Ohio-6661, ¶ 25; State v. Hill, Fairfield App. No. 98CA67, 2002-Ohio-227.
 {¶ 19} Appellant has not shown that she was prejudiced by the dual representation, or that trial counsel's representation fell below an objective standard of reasonableness. Accordingly, appellant's first assignment of error is overruled.
 {¶ 20} Supplemental Assignment of Error No. 1:
 {¶ 21} "The trial court erred in excluding the defendant-appellant during the exercise of her peremtory challenges, in violation of her rights to confrontation and due process."
 {¶ 22} Following voir dire, the trial judge, prosecuting attorney, and defense counsel went into the judge's chambers, while appellant remained in the courtroom. The judge and attorneys returned to the courtroom a short while later, and the judge stated "[t]he court has in chambers with counsel had counsel exercise peremptory challenges." Appellant's counsel did not state an objection on the record to this proceeding. In her first supplemental assignment of error, appellant argues that she was denied her right to be present at a critical stage of the trial (the impaneling of the jury) as required by Crim.R. 43(A).
 {¶ 23} This rule provides:
 {¶ 24} "The defendant shall be present at the arraignment and every stage of the trial, including the impaneling of the jury, the return of the verdict, and the imposition of sentence, except as otherwise provided by these rules. In all prosecutions, the defendant's voluntary absence after the trial has been commenced in [her] presence shall not prevent continuing the trial to and including the verdict."
 {¶ 25} A defendant's absence does not necessarily result in prejudicial or constitutional error. "[T]he presence of the defendant [in a prosecution for felony] is a condition of due process to the extent that a fair and just hearing would be thwarted by [her] absence, and to that extent only." Snyder v. Massachusetts (1934), 291 U.S. 97, 107-108, 54 S.Ct. 330; United States v. Gagnon (1985), 470 U.S. 522, 105 S.Ct. 1482. The defendant's absence in violation of the rule, although improper, can constitute harmless error where she suffers no prejudice. State v. Williams (1983), 6 Ohio St.3d, 281, 285-287.
 {¶ 26} Appellant argues that we should review this assignment of error under a "structural error analysis." Structural errors are a limited class of constitutional defects, "that defy harmless-error analysis and are cause for automatic reversal" without a showing that a substantial right has been affected. State v. Perry, 101 Ohio St.3d 118, 2004-Ohio-297, ¶ 16. Structural error analysis is reserved for "constitutional deprivations * * * affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante (1991), 499 U.S. 279, 310,111 S.Ct. 1246 (citation omitted), quoted with approval in State v. Fisher, 99 Ohio St.3d 127, 2003-Ohio-2761, at ¶ 9. Among the limited number of errors that the Ohio Supreme Court recognizes as structural are the complete denial of counsel, a biased trial court, racial discrimination in the selection of a grand jury, the denial of self-representation at trial, the denial of a public trial, and conviction upon a defective reasonable-doubt instruction. See Perry at ¶ 18-21.
 {¶ 27} We have previously held that the failure to comply strictly with Crim.R. 43(A) is not a structural error, and reiterate that holding in the present case. See Chewning at ¶ 15, citing State v. Vinzant, Montgomery App. No. 18546, 2001-Ohio-7005. Statutory or rule violations, even serious ones, will not sustain a structural-error analysis. See, e.g., Perry at syllabus (trial court's failure to maintain written jury instructions with "papers of the case" as part of the record for use on appeal, in violation of R.C. 2945.10[G]); State v. Esparza, 74 Ohio St.3d 660, 1996-Ohio-233 (trial court's violation of Crim.R. 16[B][1][e] on motion for relief from discovery).
 {¶ 28} Moreover, appellant's absence from the exercise of the peremptory challenges does not constitute the type of error that structural error guards against: the error does not "permeate `[t]he entire conduct of the trial from beginning to end' so that the criminal trial cannot `reliably serve its function as a vehicle for determination of guilt or innocence.'" Perry at ¶ 25 (citations omitted).
 {¶ 29} Consequently, because the alleged error was not objected to at trial, we will conduct a "plain error" review. See Crim.R. 52(B) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"). Plain error does not exist unless it can be said that, but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978),53 Ohio St.2d 91, 97. Notice of plain error pursuant to Crim.R. 52(B) must be taken only with the utmost caution, only under exceptional circumstances and only to prevent a manifest miscarriage of justice. Id. at 94-95.
 {¶ 30} In the present case, appellant's absence when peremptory challenges were made did not thwart a fair and just hearing. See Snyder, 291 U.S. 97, 54 S.Ct. 330. Appellant conferred with counsel before the proceeding moved into the judge's chambers, and is unable to demonstrate any prejudice resulting from her absence when the peremptory challenges were made. Consequently, her absence, with counsel's consent, was harmless error. Accord Vinzant, Williams, 6 Ohio St.3d at 287; State v. Roe (1989), 41 Ohio St.3d 18, 27. Appellant's first supplemental assignment of error is overruled.
 {¶ 31} Assignment of Error No. 2:
 {¶ 32} "The trial court erred to the prejudice of appellant in failing to grant defense counsel's criminal rule 29(a) motion for acquittal."
 {¶ 33} In her second assignment of error, appellant specifically argues that her Crim.R. 29(A) motion for acquittal with regard to the three counts of rape and one count of gross sexual imposition should have been granted. She does not argue that the motion should have been granted with regard to the remaining charges.
 {¶ 34} When reviewing the trial court's denial of a motion for acquittal under Crim.R. 29, this court applies the same test as it would in reviewing a challenge based upon the sufficiency of the evidence to support a conviction. State v. Thompson (1998), 127 Ohio App.3d 511, 525. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. A conviction will be reversed for insufficiency of evidence only if each essential element of the crime charged is not supported by some competent, credible evidence. See State v. Caton (2000), 137 Ohio App.3d 742, 750.
 {¶ 35} Appellant was charged with three counts of rape, in violation of R.C. 2907.02(A)(1)(b), and one count of gross sexual imposition, in violation of R.C. 2907.05(A)(4). The charges were brought pursuant to R.C. 2923.03(A)(2), which provides that no person shall "aid or abet another in committing [an] offense." As permitted by R.C. 2923.03(F), she was prosecuted as if she were the principal offender.
 {¶ 36} To establish that an accused aided or abetted the commission of a crime, the state must present evidence that the accused incited, assisted, or encouraged the criminal act. See State v. Sims (1983), 10 Ohio App.3d 56. Evidence of aiding and abetting another in the commission of a crime may be demonstrated by both direct and circumstantial evidence. State v. Cartellone (1981), 3 Ohio App.3d 145, 150. "Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not aiding and abetting." Sims at 59. Similarly, mere presence is not sufficient to sustain a conviction based upon aiding and abetting. State v. Mootispaw (1996), 110 Ohio App.3d 566, 570. Rather, there must be evidence of active participation by way of providing assistance or encouragement. State v. Nievas (1997), 121 Ohio App.3d 451, 456. In this assignment of error, appellant specifically argues that the state failed to present evidence that she facilitated or encouraged the offenses. We disgree.
 {¶ 37} Upon thoroughly reviewing the record, we find that the state presented sufficient evidence that appellant aided and abetted Chewning in the three counts of rape and the one count of gross sexual imposition. The state presented evidence that appellant introduced C.P. to Chewning, telling C.P. that Chewning wanted to have sex with her. Appellant encouraged C.P. to kiss Chewning and participated in the game of horse, designed to encourage C.P. to have sex with Chewning. Appellant was present when the pornographic videotape was shown to C.P. Appellant accompanied C.P. and Chewning to a convenience store where condoms were bought, and went with them to the hotel where Chewning and C.P. were to have sex. Appellant was with C.P. and Chewning in the trailer before, during and after the rapes and the gross sexual imposition occurred.
 {¶ 38} Review of the evidence demonstrates that a rational trier of fact could have found that appellant incited, assisted, or encouraged the charged criminal acts. Appellant's second assignment of error is overruled.
 {¶ 39} Supplemental Assignment of Error No. 2:
 {¶ 40} "The judgments of conviction are contrary to law and to the due process clause of the fourteenth amendment to the U.S. constitution, in that there was insufficient evidence adduced to establish each and every element of the offenses beyond a reasonable doubt."
 {¶ 41} Although broadly stated, appellant's second supplemental assignment of error argues only that her conviction for complicity to commit rape in violation of R.C. 2923.03(A)(3), as charged in count eight,[2] is contrary to law because complicity to commit rape is not a criminal offense defined by that section.
 {¶ 42} Unlike R.C. 2923.03(A)(2) which prohibits aiding or abetting another in the commission of an offense, R.C.2923.03(A)(3) proscribes "[c]onspir[ing] with another to commit [an] offense in violation of R.C. 2923.01." R.C. 2923.01
criminalizes conspiring with another to commit multiple enumerated offenses; however, this section does not include rape as one of the enumerated offenses. Consequently, this court has held that R.C. 2923.03(A)(3) and R.C. 2923.01 "do not contemplate the offense of `conspiracy to commit rape.'" Chewning at ¶ 42.
 {¶ 43} We agree with appellant that, because the indictment charging her with complicity to commit rape under R.C.2923.03(A)(3) fails to state an offense under the laws of Ohio, her conviction on this count must be vacated. Accord Chewning at ¶ 42-43. Appellant's second supplemental assignment of error is sustained with regard to her conviction for complicity to commit rape, as charged in count eight. Her conviction and sentence on this count are vacated.
 {¶ 44} Appellant's first, second, and first supplemental assignments of error are overruled, and appellant's convictions on counts one through seven are affirmed. Appellant's second supplemental assignment of error is sustained, and her judgment of guilty and sentence for complicity to commit rape in violation of R.C. 2923.-03(A)(3) as charged in count eight, are vacated.
 {¶ 45} Judgment affirmed in part, and reversed and vacated in part.
Powell, P.J., and Young, J., concur.
[1] While appellant also assigns as error the trial court's failure to order a separate trial, she has made no argument with regard to this alleged error in her brief. Because appellant fails to cite any legal authority, cite any portion of the record, or present any specific argument with respect to this assignment of error, we disregard this portion of the assignment of error for failure to comply with App.R. 12(A)(2) and App.R. 16(A)(7). See State v. Watson (1998), 126 Ohio App.3d 316, 321.
[2] This count was originally numbered count three of the October 29, 2003 indictment, but renumbered count eight when the indictments were consolidated for trial.